FARMERS STATE BANK ET AL., APPELLANTS, V. PETERSBURG
STATE BANK: F. JOUVENAT ET AL., APPELLEES.

FILED MARCH 1, 1922. No. 21999.

1. Contracts: INJUNCTION: ORAL CONTRACT TO REFRAIN FROM TRADE.
A verbal contract, whereby parties who are officers of a state bank
sell a majority of the capital stock of the bank and agree not to
again engage in the banking business in the village where the
bank is located, is valid, and if the vendors violate the agreement,
they may be enjoined from continuing such violation.

2. ———: ———: ———: CONSIDERATION. The purchase by one
party of the property of another furnishes a sufficient considera-
tion for an agreement of the latter not to engage in a certain
business again in that vicinity.

3. ———: PUBLIC POLICY. A contract to be against public policy
must have a mischievous tendency, and in some way militate
against the public welfare and the rights of the public.

4. ———: ———. In the absence of statutory provisions govern-
ing the subject, a seller of corporate stock may agree not to en-
gage in a business which would compete with that of the cor-
poration. 6 R. C. L. 795, sec. 198.

APPEAL from the district court for Boone county:
FREDERICK W. BUTTON, JUDGE. *Reversed, with directions.*

*Courtright, Sidner, Lee & Gunderson* and *Williams &
Williams,* for appellants.

*Albert & Wagner* and *W. J. Donahue, contra.*

Heard before MORRISSEY, C. J., ROSE and ALDRICH, JJ.,
RAPER and STEWART, District Judges.

RAPER, District Judge.
The plaintiffs in their amended petition allege that the
Farmers State Bank of Petersburg, Nebraska, is a cor-
poration, and that, until shortly before, it was known
as the Bank of Petersburg, but by a change in its articles
of incorporation the name was changed to Farmers State
Bank of Petersburg, and that A. J. Miller, since Decem-
ber, 1919, has been a stockholder therein and president

of the bank; that about December 10, 1919, the defendants Jouvenat and Scannell were the owners of a large amount of stock in the then Bank of Petersburg, and were the president and cashier, respectively, of said bank; that on or about December 10, 1919, A. J. Miller and one B. H. Tevis, for themselves and others, entered into an oral contract for the purchase of a majority of the stock in said bank—256 shares—from the defendants Jouvenat and A. B. Scannell at a price largely in excess of the book value, and as a part of said contract the defendants Jouvenat and Scannell each agreed with plaintiff Miller and his associates that said defendants would refrain from entering into the banking business or operate or conduct a bank at Petersburg, Nebraska, in competition with the plaintiff bank; that said contract of sale was completed and Jouvenat resigned as president and Scannell resigned as cashier, and plaintiff A. J. Miller was elected president, and Miller and Tevis and their associates entered into possession and operation of said bank and have so continued ever since; that the defendants Jouvenat and Scannell had been such president and cashier of the Bank of Petersburg for a long time, and were well and personally acquainted with all the customers and depositors of the plaintiff bank, and with its entire line of business; that Petersburg is a village of about 600 inhabitants, and there was one other bank in said place at that time; that defendants, together with one Hall and one Hays, applied to the state banking department for a charter to conduct a banking business at Petersburg, and a charter was granted therefor on December 17, 1920, under the name of Petersburg State Bank, and a room was secured and furniture and fixtures obtained to open such bank for business, and that said Jouvenat and Scannell are the president and cashier, respectively, of such newly incorporated bank. Plaintiffs pray an injunction to restrain the defendants and all of them and their agents, employees and assigns from engaging in the banking business or operating or con-

ducting said Petersburg State Bank at Petersburg, Nebraska.

The defendants Jouvenat and Scannell in their answer deny the plaintiffs' allegation that they agreed to refrain from entering into the banking business or operate or conduct a bank at Petersburg. They admit substantially the claims of plaintiffs as to the other matters alleged. The defendants further plead that the alleged agreement concerning the right of defendants, or either of them, from engaging in or operating a bank at Petersburg or serving as officers or agents of said bank is illegal, in restraint of trade, and interferes with the banking laws and regulations of the state, and obstructs and impedes governmental affairs in the discharge of its lawful functions, and is contrary to public policy and void.

Trial was had, and the court found "that defendants at the time they sold their banking business in Petersburg to plaintiffs, and as part consideration therefor, promised not to enter into the banking business again in said town." The court further found that banking is a quasi-public business and subject to regulation and control by the state, and of a public nature; that the state is interested under our laws, and the public dealing with the bank is likewise interested; that the bank is interested because of its relation to the state and the public, and because whatever affects its officers must affect the bank, and also affects other banks. The trial judge in his opinion further says:

"Now several things may happen if this injunction is allowed. It will force a change in the officers of the bank. These defendants must retire as officers and new officers must be elected, also these defendants must surrender their stock or they will still be in the banking business at Petersburg; hence, the bank must buy the stock or find purchasers therefor. This may be hard to do when money is scarce and may work a hardship on the bank. Again, these officers are men in whom the customers of the bank have confidence, for they have had

experience at Petersburg in the banking business. If they are compelled to retire it may destroy confidence in the bank that is so necessary to the success of such an institution. If this happens it will or may cause a 'run' on the bank that may be disastrous. Indeed, the withdrawal of the financial or moral support of these defendants from this bank may work its utter ruin. Other banks may be thrown into confusion and the state itself seriously affected; and, if a national bank, the government itself disturbed and compelled to take a hand. All of which may cause litigation and breed a multiplicity of law suits."

And it is further stated in the opinion: "The court is forced to the conclusion that an injunction against these defendants affects seriously the rights of the bank, and that whatever affects the bank affects the public interest. Hence, the court finds generally for defendants."

The injunction was refused and the action dismissed. The case was tried on the 7th of January, 1921. The evidence discloses that the bank at the time of trial was doing business and receiving deposits.

The finding of the court that the agreement was made by the defendants is fully sustained by the evidence. The only question therefore is whether under the law such agreement is valid and should be enforced. Aside from the controverted question of fact, appellees urge as reasons for sustaining the judgment: "The alleged contract is not enforceable because it purports to bind the defendants not to engage in quasi-public business, or in conducting one of the instrumentalities of the state," and, "an injunction should not be granted when the rights of third parties will be injuriously affected."

In support of these propositions it is urged that banks under our statutes are quasi-public agents, because they are engaged in quasi-public business, and that the state banking system is as much a part of the governmental machinery of the state as a township, school district or municipality, and appellees base their claim upon this

proposition, "Whether a contract, whereby one agrees that he will not participate in the organization or management agency at a given place, contravenes public policy."

A banking corporation is quasi-public in character and as such is subject to statutory regulation for the protection of the public, but the same may be said of a private banker, in those states where private banks are permitted. The police power of a state may be exercised over many business transactions and acts of its citizens, yet it does not follow that all who have been placed under regulatory restrictions are exercising governmental agencies. The law of the state does not require any one to organize a bank or to become one of its officers. Such acts are purely voluntary; the state does pass upon the application for a charter, and when the organization is completed the stockholders, and not the state, elect officers. The state has no voice in such selections, except that some of the officers shall have certain qualifications as to residence and amount of stock held, etc.

There is no restriction on the sale of stock. It is property that may be transferred without hindrance. The defendants had full right to sell their stock on such terms and for such consideration as they deemed satisfactory. When they sought to organize a new bank it was of their volition, and not because the law required such bank. Nor were they elected officers in the bank because any public necessity or law required it. So if it be conceded that a bank is a quasi-public institution, and that no injunction could be granted against the bank that might interefere with its operations, because of its being a governmental agency (which we do not, however, decide), that is not decisive of the question at issue. Shares of stock in a corporation constitute a species of property entirely distinct from the corporate property. In *McCullough v. Maryland*, 4 *Wheat.* (U. S.) * 316, Chief Justice Marshall makes a clear distinction between the bank and its stockholders. The learned chief justice held

that the state of Maryland could not tax the bank, but expressly held that the state could tax "the interest which the citizens of Maryland may hold in this institution." In this case no attempt is made to interfere with the operations of the bank, unless it can be said that to prevent the defendants from conducting the business of the bank interferes with its operations. Most of the cases cited by the appellees refer to actions against public service corporations. *Chicago Gas Light & Coke Co. v. Peoples Gas Light & Coke Co.*, 121 Ill. 530, 2 Am. St. Rep. 124, probably as clearly as any states the rule contended for by appellees. "Though restraint of trade imposed by contract is but partial, it will not be enforced if it is unreasonably injurious and oppressive to the public."

How can it be said that enjoining defendants from active management or conduct of the bank can injuriously or oppressively affect the public? The bank's solvency rests upon the value of its assets, and not upon the persons who happen to be its officers. It is true that their business ability may have contributed to see that the assets are good, but that does not presuppose that others may not be just as astute business men. Perhaps the defendants, because of their long and favorable acquaintance with the people of the community, may have brought business in a larger volume to the new bank than any other officers could have done, but that is the particular reason that plaintiff Miller exacted the promise from them.

Appellees further claim that the new bank's stockholders were influenced in buying their stock by these same considerations, and their rights will be injuriously affected; furthermore, that it was chartered on the theory that defendants should participate in its management, and that is a part of its contract with the state. As to this last claim it is sufficient to say that the stockholders, and not the state, selected the defendants as officers, and the stockholders can change the officers whenever it is deemed by them to be expedient. It may be that with

other officers the bank may not be able to control so large or lucrative a business, and the stock rendered of less value thereby, but that is problematic. An injunction, of course, should not issue where greater injury would be done by granting than refusing it. It cannot be said that greater injury will be done to the other stockholders in the new bank by granting the injunction than would be done to plaintiff Miller by refusing it.

The learned trial judge assumed that, if the injunction was granted, it would require not only a change in the offices of president and cashier, but also that the defendants must surrender their stock and the new bank must buy or find purchasers for the stock. If that assumption is correct his conclusion that it would work too great a hardship on the bank might be sound. This does not necessarily follow, but under our view of the case that feature need not be considered. A mere shareholder in a corporation cannot in all cases be said to be engaged in the corporate business. He puts his money in as an investment. The ownership of the stock does not place him in a managerial position. The owner of stock in a railroad or insurance company is not, merely because of such ownership, engaged in the railroad or insurance business. There is authority to the effect that it is a violation of such a covenant to become a stockholder in a corporation engaged in competing business within the prescribed limits. *Merica v. Burget,* 36 Ind. App. 453. However, in that case the suit was for damages, and the defendant became stockholder and cashier in the newly organized bank. See, also, *Kramer v. Old,* 119 N. Car. 1, 56 Am. St. Rep. 650. While the North Carolina court held it was a violation of the contract for the prohibited parties to take stock in the competing corporation, yet as a matter of fact no stock had been issued by the new concern. In construing and applying this class of contracts each case must be governed by its peculiar situation and surroundings, and its own particular facts. If the defendants had purchased some of the shares of the rival bank which was

in existence when the transfer of the stock in controversy was made, would that fact alone have given plaintiff a right of action? We do not so view the contract. The evident purpose was to prohibit the defendants from going into a new bank to conduct and operate it, to prevent them from using their well-known names as officers, and to keep them from using their presence and talents and standing in meeting customers, and personally transacting business with or for them.   And while it may be that in many cases the mere subscription to stock in a newly organized rival concern, under such agreement as defendants made, would be a violation of that agreement, we hold that, in this case, the acquisition of stock itself was not inhibited by their agreement.

The Farmers State Bank is joined as plaintiff with A. J. Miller.   No objection was raised in the district court to such joinder, and it is not discussed in the briefs.   The plaintiff bank is not entitled to any relief as against the defendants either under the pleadings or evidence.   Their agreement was personal with Miller and Tevis, and the plaintiff bank could not, under the situation disclosed by the evidence, succeed to any right given to Miller and Tevis and their associates by the defendants' promise.

The plaintiff A. J. Miller is entitled to a permanent injunction as prayed, restraining the defendants Jouvenat and Scannell from engaging in the business or operating or conducting the Petersburg . State  Bank; that the defendants be enjoined from holding any office, or employment therein, or from participating in any manner in the conduct of the business, or any of its operations, for such time as plaintiff Miller owns stock in the Farmers State Bank of Petersburg; but not, however, enjoining defendants from owning and holding shares of stock in the Petersburg State Bank.

The cause is reversed and remanded to the district court, with directions to enter  decree  in accordance with this opinion.                                        REVERSED.