**Albert NERKEN, et al., Appellants,**

v.

**STANDARD OIL COMPANY (INDIANA).**

**No. 86–5149.**

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 16, 1986.

Decided Feb. 13, 1987.

Alan J. Roth, with whom Margaret A. McGoldrick, Washington, D.C., was on the brief, for appellants.

Thomas D. Yannucci, with whom John M. Walker, Washington, D.C., was on the brief, for appellee.

Before WALD, Chief Judge, MIKVA, Circuit Judge, and GESELL,* District Judge.

Opinion for the Court filed by District Judge GESELL.

GESELL, District Judge:

This appeal seeks review of an order of the District Court dismissing appellants' complaint before trial. The complaint alleged breach of contract, breach of contractual obligation of good faith performance, breach of fiduciary duty, and securities law and RICO violations. District Judge Thomas F. Hogan dismissed the amended particularized complaint on defendant's motion, see *Nerken v. Standard Oil Company (Indiana)*, Civ. No. 85–1242, slip op. at 1–4 (D.D.C. Jan. 22, 1986). Finding no error for the reasons set forth below, we affirm.

Appellants were shareholders of Solarex Corporation ("Solarex") along with others when in 1979 defendant Standard Oil Company (Indiana) ("Standard") invested in Solarex and on May 25, 1979 entered into a Stock Purchase Agreement ("Agreement") with Standard which forms the basis for appellants' breach of contract claims.

The alleged breach of contract addresses the meaning and effect of Section 10(d) of the Agreement which reads in its entirety as follows:

At such time as a purchase of shares by Standard results in its ownership of more than 40% of the outstanding shares of Class A common stock, Standard will extend an offer to other stockholders to purchase all shares offered to it within the succeeding one year at a price per share no lower than that last paid by Standard for Class A common stock in an arms-length transaction with any of the sellers, provided no materially adverse change in the business of Solarex occurs in such period. Any dispute arising out of this paragraph shall be subject to arbitration as provided in Section 15 hereof.

In September 1983 Solarex was in need of capital and merged with Standard at a distress price offered to Solarex stockholders by Standard, a price below that which would have applied if the merger had fallen under the terms of Section 10(d). Standard at the time of the merger held less than 40% of the Class A common stock ("common"). Appellants, however, claimed that Standard's other holdings of Solarex convertible preferred stock ("preferred"), which entitled Standard to convert its preferred into additional common shares at a later date, resulted in its "ownership of more than 40% of the outstanding" common at the time of the merger, thus bringing the merger within the requirements of Section 10(d) of the Agreement.

It is undisputed that as of September 1983 Standard owned 38.2% of Solarex common and the entire issue of Solarex convertible amounting to 825,000 shares. Upon conversion of all preferred, Standard would hold at least 41.5% of Solarex common. However, the earliest date provided for conversion of any preferred was 1985 and Standard could not vote its preferred to bring about an earlier conversion. Indeed, the preferred carried none of the usual voting rights of the common stock. The Solarex Certificate of Determination of Preferences dated November 21, 1980 provided under the heading "Consolidation, Merger, Sale of Assets, Reorganization" that "prior written consent or affirmative vote of the holders of not less than one-half of the Preferred Stock outstanding" was

---

* Of the United States District Court for the District of Columbia, sitting by designation pursu- ant to 28 U.S.C. § 292(a).

required for these changes in the corporate structure. The only voting power held by Standard at the time of the merger attributable to its preferred stock holdings was the power to block the merger, but the preferred gave it no voting right to initiate a merger.

Thus the contract issues hinge on determining whether acquisition of the preferred constituted "purchase" of shares by Standard result[ing] in its ownership of 40% of the outstanding shares of Class A common stock" at the time of the merger within the meaning of Section 10(d).

The parties agree this contract language is to be treated as unambiguous, and accordingly interpreted consistent with its plain meaning. Appellants characterized Section 10(d) of the Agreement in their complaint as including "a requirement that Standard offer to buy out all shareholders (at the indicated price) in the event it acquired clear control of Solarex, defined by the contract as ownership of more than 40% of the Class A stock." Thus it is admitted that a concept of 40% voting control through ownership of common underlies Section 10(d). The precise language of the Agreement makes this even more obvious.

■ The above language quoted from the complaint omits significant contract language. While "ownership" is perhaps a somewhat indefinite concept, this term is precisely narrowed by the context to involve ownership only of "40% of the *outstanding*" common. Common authorized for future use upon conversion of preferred, even if held in a corporation's treasury to await a subsequent event that will trigger conversion, clearly is not outstanding because it cannot be voted by the preferred stockholder or anyone else. Delaware law, which is controlling under the terms of the Agreement, defines "outstanding" stock as that which can be voted and therefore is "construed to mean stock in

the hands of shareholders, not stock in the treasury." *Atterbury v. Consolidated Coppermines Corp.*, 26 Del. Ch. 1, 20 A.2d 743, 747 (1941); *see also Edelman v. Phillips Petroleum Co.*, No. 7899, slip op. (Del. Ch. June 3, 1986). This is the prevailing interpretation generally, *see, e.g.,* 11 *Fletcher Cyc. Corps* § 5082 at 22 & n. 5, 46–48 & n. 26 (Perm. ed. 1986).

While appellant vigorously argues that under Delaware law "ownership" may include a prospective right to own common, this analysis need not be pursued since the contract applies only to common that was "outstanding." Even if Standard can somehow be said to have had some prospective interest in the common underlying the preferred and it had been set aside for future conversion of the preferred, Standard could not vote the common until conversion. Therefore, at the time of the merger the common was not "outstanding" within the meaning of Section 10(d) and the price provisions did not apply.

In addition to its preferred stock holdings, Standard had, by August 1983, also obtained options to purchase additional shares of common sufficient to enable it to increase its common stock holdings over 40%, but these options had not been exercised at the time of the merger in September 1983.

In rejecting appellants' breach of contract claims, the District Court observed the common sense of the situation when it noted that preferred and common are two distinct forms of securities and that under Delaware law one is not an owner of common stock prior to conversion of the preferred or before an option to buy has been exercised. At the time of the merger Standard did not have ownership of 40% of the outstanding common; neither its acquisition of preferred nor of options to buy common, considered individually or together, triggered Section 10(d) of the Agreement.**

** Since the District Court so held it was therefore correct in dismissing the counts of the complaint alleging violations of the securities laws and the RICO statute, *see Nerken, supra,* slip op. at 7, which appellants concede both depend on proof that Standard knowingly exceeded Section 10(d)'s 40% outstanding common stock threshold.

Appellants attempt to frame a further claim, again focusing on Section 10(d) of the Agreement, by alleging that Standard did not act in good faith. They assert that Standard induced Solarex to undertake irrational business projects and withdrew promises of financial support, forcing Solarex shareholders to sell out at distress prices so they lost the benefits of the Agreement. They contend the Agreement placed a duty upon Standard not unnecessarily to precipitate a merger prior to the 1991, when the preferred would be automatically fully converted by its terms.

■ A shareholder who obtains an agreement from a potential acquirer allowing the shareholder to "hold out" for a price under a formula dependent on an uncertain future event does not, without more, thereby impose a duty upon the potential acquirer to do more than meet the terms of the agreement. As the District Court correctly noted, *see Nerken, supra*, slip op. at 8–9, appellants have not sufficiently alleged that Standard in any way prevented them from holding out for the higher price they allegedly deserved under their claim that Standard had a good-faith obligation to offer that price under Section 10(d). Therefore they have not established a cause of action. But, in any event, if appellants believed they had a right to an "arms-length" price, and were not being offered it, they could have challenged the merger at the time. They did not do so— even though Standard's actions alleged to have occurred in bad faith were known to them at the time. By failing to oppose the merger appellants waived any claim that they were being injured by Standard's alleged bad faith of which they were fully aware at the time.

The gravamen of this same general claim is again raised by appellants in their allegation that Standard breached its fiduciary duty to Solarex shareholders by weakening Solarex so as to force a premature merger. This claim would require initially proof that Standard, although not a majority shareholder, nevertheless controlled Solarex. Under Delaware law such a claim, as the District Court noted, is subject to an exacting standard. *See, e.g., Aronson v. Lewis*, 473 A.2d 805, 815 (Del.1984); *Kaplan v. Centex Corp.*, 284 A.2d 119, 123 (Del. Ch. 1971). This showing would be especially difficult in this case given the parties' understanding that 40% of the common was indicated to constitute control. Other facts and circumstances that might have constituted control at the time were not particularized, as the District Court noted.

■ Even assuming control because of other facts and circumstances that could be shown, this breach of fiduciary duty claim is necessarily premised on harm to the corporation, and it could have been advanced only in a shareholders derivative action. *See, e.g., Bokat v. Getty Oil Co.*, 262 A.2d 246, 249 (Del.1970). Appellants have brought no such action, nor can they, since they are no longer stockholders of Solarex, having agreed to the merger and sold their stock. *See Lewis v. Anderson*, 477 A.2d 1040, 1046 (Del.1984).

Thus all claims below failed, dismissal was proper and the District Court is accordingly

*Affirmed.*