IN RE INVOLUNTARY DISSOLUTION OF BATTLE CREEK STATE BANK, A NEBRASKA BANKING CORPORATION.

WILLIAM B. HENGSTLER, COTRUSTEE OF THE A.W. HENGSTLER TESTAMENTARY TRUST, APPELLANT, V. BATTLE CREEK STATE BANK ET AL., APPELLEES.

575 N.W.2d 356

Filed March 6, 1998.    No. S-96-062.

David A. Domina, of Domina & Copple, P.C., for appellant.

Thomas H. DeLay, of Jewell, Gatz, Collins, Fitzgerald & DeLay, for appellees Battle Creek State Bank et al.

Robert S. Lannin, of Croker, Huck, Kasher, DeWitt, Anderson & Gonderinger, P.C., for appellees Robert Doering and Karen Hale.

Rodney W. Smith, of Smith & Doerr, P.C., for appellee Jean Brestel.

Don Stenberg, Attorney General, and Fredrick F. Neid for amicus curiae Department of Banking and Finance, State of Nebraska.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, and STEPHAN, JJ.

PER CURIAM.

## STATEMENT OF CASE

This appeal presents the question of whether an allegedly oppressed minority shareholder may invoke involuntary dissolution proceedings pursuant to Neb. Rev. Stat. §§ 21-2096 to 21-20,104 (Reissue 1991) to dissolve a Nebraska bank. We conclude that such a shareholder may not invoke involuntary dissolution proceedings in the district courts. Rather, the proper venue is the Nebraska Department of Banking and Finance (Department), pursuant to Neb. Rev. Stat. § 8-187 (Reissue 1997).

Section 8-187, which empowers the Department to take possession of a Nebraska bank and conduct its affairs, is inconsistent with § 21-2096, which gives the district courts similar powers. In resolving this inconsistency, we apply well-settled rules of statutory construction, bearing in mind that banks are quasi-public institutions that have long been closely regulated by the Legislature. Legislative intent is not clear as to whether § 21-2096 was intended to implicitly repeal § 8-187. The Legislature clearly intended, however, to give the Department broad authority over Nebraska's banks. Accordingly, § 8-187 controls, and we affirm.

The plaintiff-appellant, William B. Hengstler, as cotrustee of the A.W. Hengstler testamentary trust, a shareholder of the

defendant-appellee Battle Creek State Bank, seeks the involuntary dissolution of the bank under the provisions of the Nebraska Business Corporation Act (Act), Neb. Rev. Stat. § 21-2001 et seq. (Reissue 1991 & Cum. Supp. 1994), since rewritten by the Legislature in 1995 as the Business Corporation Act, § 21-2001 et seq. (Reissue 1997). The district court concluded that as the bank is a Nebraska corporation which is chartered as a commercial bank, its dissolution lies exclusively within the jurisdiction of the Department or the Federal Deposit Insurance Corporation (FDIC). It therefore granted the bank's motion for summary judgment and sustained the demurrers of the other shareholders, the defendants-appellees Battle Creek State Company, William M. Svoboda, Richard B. Grant, Donald E. Smejkal, Lawrence Praeuner, Almira Freudenburg, Robert Doering, Karen Hale, Roger L. Brestel, and Jean Brestel. The appellant successfully petitioned this court to bypass the Nebraska Court of Appeals on the ground that the case presents a question of first impression. He asserts, in summary, that the district court erred in ruling as it did.

## PROCEDURAL POSTURE

Although the district court sustained the demurrers of the defendant shareholders, it did not dismiss the suit as to them. As the sustaining of a demurrer not followed by a judgment of dismissal terminating the litigation does not constitute a reviewable final order, we have acquired no jurisdiction over that aspect of the appeal. See *Barks v. Cosgriff Co.*, 247 Neb. 660, 529 N.W.2d 749 (1995). We therefore concern ourselves only with the matter of the summary judgment in favor of the bank.

We also observe that notwithstanding that the appellant is designated as "cotrustee," the assignments of error raise no issue as to his capacity to bring this action without the participation of any other trustee. As a consequence, we do not concern ourselves with the matter of the appellant's capacity to maintain this action.

## SCOPE OF REVIEW

The dispositive question, whether the Act permits a shareholder to bring an action to involuntarily dissolve a corporation

chartered as a commercial bank under the state's banking statutes, Neb. Rev. Stat. § 8-101 et seq. (Reissue 1991 & Cum. Supp. 1994), is one of law. In connection with a question of law, we, as an appellate court, have an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Four R Cattle Co. v. Mullins*, 253 Neb. 133, 570 N.W.2d 813 (1997); *Boettcher v. Balka*, 252 Neb. 547, 567 N.W.2d 95 (1997).

## ALLEGATIONS ON RECORD

The appellant has alleged that the directors and officers of the bank, which is insured by the FDIC and is a member of the Federal Reserve System, engaged in "improper, oppressive or fraudulent acts, all contrary to the best interests of the Bank" in that they paid excessive amounts of compensation to certain shareholders, directors, and officers; used bonuses as a subterfuge to avoid the payment of dividends otherwise reasonably due to shareholders; and engaged in insider purchases and sales of loans to and from the bank.

## ANALYSIS

The appellant argues, inter alia, that because banking corporations are generally subject to the Act, which does not specifically exclude banks from its involuntary dissolution procedures, involuntary dissolution of a bank is proper pursuant to § 21-2096 (Reissue 1991). The bank, however, contends that § 21-2096 is inconsistent with the banking laws contained within chapter 8 of our statutes and thus, that chapter 8 controls. The Department joins in this contention as amicus curiae. Therefore, the issue we must resolve is whether a banking corporation may be involuntarily dissolved under § 21-2096 of the Act despite the fact that such action would conflict with the banking laws.

We begin our analysis by noting that the Act does not prohibit the involuntary dissolution of a corporation. However, a banking corporation is unlike a purely private corporation in that a banking corporation is a quasi-public institution subject to the special banking rules and regulations of the State of Nebraska. § 8-102. It is a quasi-public institution in the sense that "[t]he whole stream of commerce, whether interstate or

intrastate, largely depends upon [its existence]." *United States v. Doherty*, 18 F. Supp. 793, 794 (D. Neb. 1937), *aff'd* 94 F.2d 495 (8th Cir. 1938). Indeed,

> "[b]anks are indispensable agencies through which the industry, trade, and commerce of all civilized countries and communities are carried on; the business which they transact, though for private profit, is of a pre-eminently public nature, and is therefore universally recognized as a proper subject of legislative regulation under the police power of the state. . . ."

*Placek v. Edstrom*, 148 Neb. 79, 92, 26 N.W.2d 489, 497 (1947). Thus, due to the stark contrast in nature between banking corporations and strictly private corporations, public policy dictates that banking corporations should be afforded different treatment with respect to the manner in which they may be involuntarily dissolved. However, even though there are sound public policy arguments for not treating banks the same way as other business corporations, our analysis of the banking statutes and the Act is necessary to the resolution of the instant case.

The Act empowers the district courts to dissolve a corporation in a proceeding by a shareholder when the directors or those in control of the corporation have acted, are acting, or will act in a manner that is illegal, oppressive, or fraudulent. § 21-2096(1)(b). Once the foregoing is established, the district court may liquidate the assets and business of the corporation in accordance with §§ 21-2097 to 21-20,100 (Reissue 1991). Once liquidation proceedings have begun, § 21-2097 empowers the district court to conduct the affairs of the corporation prior to entering a decree of dissolution. Specifically, the district court has the power, inter alia, to issue injunctions, appoint receivers, and carry on the business of the corporation. *Id.* Furthermore, receivers appointed by the district court to carry on the liquidation have the authority to sell, convey, and dispose of all or any part of the assets of the corporation wherever situated, either at public or private sale. *Id.* Most significantly to the instant case, § 21-2097 states that "[t]he court appointing such receiver shall have *exclusive* jurisdiction of the corporation and its property, wherever situated." (Emphasis supplied.)

When a corporation is conducting business as a bank, however, that corporation falls within the purview of §§ 8-101 to 8-1,139, which regulate banks and banking in this state. Section 8-187 empowers the Department to take possession of the property and business of a bank and conduct its affairs, retaining possession of all money, rights, credits, assets, and property of every description belonging to the bank, whenever it finds that a bank "is conducting its business in an unsafe or unauthorized manner." § 8-187.

The grounds for involuntary dissolution alleged by the shareholders in the instant case, "improper, oppressive or fraudulent acts, all contrary to the best interests of the Bank," are encompassed within the broader language of § 8-187. The specific acts alleged by the shareholders, that the directors and officers of the bank paid excessive amounts of compensation to certain shareholders, directors, and officers; used bonuses as a subterfuge to avoid the payment of dividends otherwise reasonably due to shareholders; and engaged in insider purchases and sales of loans to and from the bank, are neither "authorized" under Nebraska law, nor are they "safe." See § 21-2035 (Reissue 1991) (stating that director shall discharge his or her duties in good faith, with care ordinarily prudent person in like position would exercise under similar circumstances, and in manner that is in best interests of corporation).

Thus, the Department is authorized to take possession of the property and business of a bank upon the same grounds that a shareholder may bring a proceeding for involuntary dissolution.

Moreover, the Department's power is effective against any mesne or final process issued by any court against the bank whose property has been taken, which includes a proceeding for dissolution. § 8-187. Thus, according to the plain language of § 8-187, once the Department takes possession of a banking corporation, the court is powerless to conduct the affairs of that corporation or enter a decree of dissolution. See *Svoboda v. Snyder State Bank*, 117 Neb. 431, 220 N.W. 566 (1928) (holding that suit may be brought against corporation that is in possession of administrative agency, so long as it is not sought to take away or subject any of assets of corporation, or to interfere with possession thereof by agency).

Likewise, even after a court has appointed a receiver to liquidate the corporation's assets and business, § 8-187 still empowers the Department to take possession of that bank and conduct its affairs, since the corporation continues its legal existence. See §§ 21-20,100 and 21-20,101 (Reissue 1991). Clearly then, § 21-2096, which gives the court exclusive jurisdiction of the corporation and its property, is in conflict with § 8-187, because a corporation may not be in the exclusive possession of both the Department and the district court simultaneously. For example, not only is the court powerless to enter a decree of dissolution under § 21-20,101 once the Department takes control of a bank, it also is powerless to appoint a receiver under § 21-2097, both by statute and by prior case law. See *Farmers State Bank v. Luikart*, 131 Neb. 692, 269 N.W.2d 627 (1936).

It is true that a legislative act which is complete in itself and is repugnant to or in conflict with a prior law repeals the prior law by implication to the extent of the repugnancy or conflict. *Mauler v. Pathfinder Irr. Dist.*, 244 Neb. 217, 505 N.W.2d 691 (1993). However, it is also true that in the absence of clear legislative intent, the construction of a statute will not be adopted which has the effect of nullifying or repealing another statute. *State ex rel. City of Elkhorn v. Haney*, 252 Neb. 788, 566 N.W.2d 771 (1997). Moreover, to the extent there is conflict between two statutes on the same subject, the specific statute controls over the general statute. *SID No. 2 v. County of Stanton*, 252 Neb. 731, 567 N.W.2d 115 (1997). Sections 8-187 and 21-2096 both regulate the proceedings available when a corporation's directors act in a manner that is inimical to that corporation's best interests. Section 8-187 is more specific, however, in that it regulates the proceedings available when such action is taken by the directors of a corporation that is conducting business as a bank. Thus, § 21-2096 did not implicitly repeal § 8-187; rather, § 8-187 controls.

We have long held that in construing a statute, a court must look to the statute's purpose and give the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it. *Slagle v. J.P. Theisen & Sons*, 251 Neb. 904, 560 N.W.2d 758 (1997). Furthermore, the components of a series or collection of statutes pertaining to a

certain subject matter may be conjunctively considered and construed to determine the intent of the Legislature so that different provisions of the act are consistent, harmonious, and sensible. *SID No. 2 v. County of Stanton, supra.* In construing § 21-2096 and § 8-187 together, it is apparent that the Legislature intended § 8-187 to control. The purpose of § 21-2096, insofar as it provides for the involuntary dissolution of a corporation by a shareholder, is to protect the rights of that corporation's minority shareholders. 3 Model Business Corporation Act Annotated § 14.05 (3d ed. 1984 & Supp. 1996). The purpose of § 8-187, however, is to protect not only the minority shareholders of a bank, but also the entire public at large.

It is the public nature of the banking industry that prompted this court's conclusion that the purpose of the banking statutes is to take the banking industry out of private hands and place it under state control, *State, ex rel. Chamberlin, v. Morehead,* 99 Neb. 146, 155 N.W. 879 (1915), which purpose would be defeated if a banking corporation's shareholders could bring a private action for involuntary dissolution.

Therefore, we conclude that the shareholders of a corporation conducting business as a bank may not institute involuntary dissolution proceedings in a district court.

## CONCLUSION

We conclude, therefore, that the district court was correct in granting summary judgment in favor of the bank. The judgment of the district court as regards the bank's motion for summary judgment is, therefore, affirmed.

AFFIRMED.

McCORMACK, J., participating on briefs.

CAPORALE, J., dissenting.

I respectfully dissent. It should be noted at the outset that the majority assumes a jurisdictional conflict which is not present. It may well be that had the Department of Banking and Finance taken possession of Battle Creek State Bank under Neb. Rev. Stat. § 8-187 (Reissue 1997), the district court would have no jurisdiction to entertain this action. But that is not the situation. It is only by ignoring that the department had not taken possession of the bank and by ignoring as well a number of well-

established rules relating to the construction of statutes that the majority has converted statutory silence into a nonexistent statutory conflict. As a result, it rests its erroneous conclusion on faulty premises.

Our banking statutes provide that the business of banking may be conducted only by "means of a corporation duly organized for such purpose under the law of this state," Neb. Rev. Stat. § 8-114 (Reissue 1997), thereby placing banking corporations within the general coverage of the Nebraska Business Corporation Act, Neb. Rev. Stat. § 21-2001 et seq. (Reissue 1991 & Cum. Supp. 1994), since rewritten as the Business Corporation Act, § 21-2001 et seq. (Reissue 1997).

The corporation act empowers district courts to liquidate a corporation in an action by a shareholder when the acts of the directors or those in control of the corporation are illegal, oppressive, or fraudulent. § 21-2096(1)(b) (Reissue 1991). Neither our banking statutes nor the corporation act restricts the kinds of corporations that may be involuntarily, or judicially, dissolved by shareholder action.

Had the Legislature intended to exempt banking corporations from the purview of the corporation act in this regard, it could have so provided. It is a general principle of interpretation that the mention of one thing implies the exclusion of another: Expressio unius est exclusio alterius. Under this principle, it has been held that the enumeration of certain powers implies the exclusion of all others not fairly incidental to those enumerated and that an affirmative description of cases in which certain powers may be exercised implies a negative on the exercise of such powers in other cases. *Harrington v. Grieser,* 154 Neb. 685, 48 N.W.2d 753 (1951). Indeed, the Legislature has found occasion to specifically exclude banking corporations from the operation of certain provisions of the corporation act. For example, the Legislature specifically exempted shareholders of banks from the right to dissent and obtain payment for the fair value of their shares in the event of certain corporate actions. § 21-2079(3) (Reissue 1991).

We have applied general corporate law to banking corporations in several cases. *Schmid v. Clarke, Inc.,* 245 Neb. 856, 515 N.W.2d 665 (1994), arose from the merger of two bank holding

companies. The merger agreement provided for the payment of a premium to shareholders who signed a covenant not to compete. One of the minority shareholder plaintiffs claimed he was unfairly treated because he was not in the position to sign such a covenant, inasmuch as he served as president of a competing bank. Noting that he and his shareholder plaintiff wife neither attended the meeting called to vote on the merger nor voted against it, electing instead to surrender their stock and receive payment for it, we held that they were estopped from seeking redress for mistreatment. Although we observed that the plaintiffs had a statutory opportunity to object to the terms of the merger before the Department of Banking and Finance and to have a hearing thereon, we decided the case under general corporate law, relying on *Dold Packing Co. v. Doermann*, 293 F. 315 (8th Cir. 1923) (where party doing business with corporation expended time and money in reliance on actions of corporation, stockholders estopped from denying those actions), and *Nerken v. Standard Oil Co. (Indiana)*, 810 F.2d 1230 (D.C. Cir. 1987) (minority shareholders of acquired corporation claiming they had not received fair price should have challenged merger before it was completed).

There are other instances in which the banking statutes being silent, we have applied the general law. *Lauritzen v. Davis*, 214 Neb. 547, 335 N.W.2d 520 (1983) (applying principles of contract and trust law in action by minority shareholder to determine which shareholders had contractual rights to buy certain bank stock); *Farmers State Bank v. Petersburg State Bank*, 108 Neb. 54, 187 N.W. 117 (1922) (applying contract law in enforcing covenant not to compete signed by bank stockholders and officers).

Of particular significance in illustrating that banking corporations are not governed solely by the banking statutes is our decision in *McMillan v. Chadron State Bank*, 115 Neb. 767, 214 N.W. 931 (1927), wherein we held that as the then Department of Banking had not taken possession of the bank, the bank did not have the authority to order a capital assessment against stockholders. Thus, *McMillan* establishes that the present Department of Banking and Finance can exercise only powers which have been statutorily granted to it. While our banking

statutes require the consent of the department in the voluntary dissolution of a bank, Neb. Rev. Stat. § 8-184 (Reissue 1997), and give it the power to dissolve a bank that is found to be insolvent, § 8-187, they are silent on the matter of an involuntary dissolution of a bank sought by a shareholder.

Michie's treatise on banks and banking notes that *"[p]roceedings to dissolve banking corporations are usually regulated by statute* in the various jurisdictions, and they can only be dissolved in the prescribed manner. But if the statute provides no method of procedure, that specified for ordinary actions should be followed." (Emphasis in original.) 3 Michie on Banks and Banking § 46 at 191-92 (1996). Stated another way, it is not the province of a court to read into a statute something omitted by the Legislature, see *Ledwith v. Bankers Life Ins. Co.*, 156 Neb. 107, 54 N.W.2d 409 (1952), and a court may not read an exception into a statute which the Legislature did not make, *Siren v. State*, 78 Neb. 778, 111 N.W. 798 (1907). Thus, if a state has not passed a statute providing a special procedure, then a court must apply the general statutes, in this instance the corporation act.

The Legislature's requirement that banking organizations incorporate under state law, its willingness to specifically enumerate the exclusion of a shareholder's right to dissent and obtain payment in the event of certain corporate actions, and its failure to exclude bank shareholders from the right to bring an action for involuntary, or judicial, dissolution clearly establish, under our rules of construction, that it intended bank shareholders to have such a right.

I recognize, as suggested by the bank and the Department of Banking and Finance as amicus curiae, that there are important policy considerations weighing against allowing minority shareholders in banking corporations to bring an action seeking corporate dissolution. Banks and other banklike institutions are the centers of economic activity in communities. "The very nature of banking is a quasi public business. The whole stream of commerce, whether interstate or intrastate, largely depends upon this business." *United States v. Doherty*, 18 F. Supp. 793, 794 (D. Neb. 1937). Concern over the stability and management of banks and, in particular, a desire to protect depositors have

led both state and federal governments to establish special procedures for banks, including creating the Federal Deposit Insurance Corporation (FDIC) and giving the state banking department the authority to audit banks and require periodic reports. It may therefore be that, as suggested, denying minority bank shareholders the right to file an action for dissolution of a bank is a logical extension of the state's attempt to protect depositors and safeguard the stability of our banking system. But if that is so, it is the province of the Legislature, not of this court, to make that policy determination. See, *Haman v. Marsh*, 237 Neb. 699, 467 N.W.2d 836 (1991); *State ex rel. Douglas v. Thone*, 204 Neb. 836, 286 N.W.2d 249 (1979).

Having concluded that the corporation act permits a shareholder to bring an action to dissolve a corporation chartered as a commercial bank under our banking statutes, it seems to me I am obligated to consider the amicus' claim that in any event, our law is preempted by federal law.

In that regard, I begin by noting that a state bank insured by the FDIC may voluntarily withdraw from membership in the Federal Reserve System by giving 6 months' written notice to the system's board of governors and surrendering all of its capital stock in the Federal Reserve bank. 12 U.S.C. § 328 (1994). Upon withdrawal as a member of the system, a bank may then voluntarily, upon giving the FDIC at least 90 days' written notice, terminate its insured status with the FDIC. 12 U.S.C. § 1818(a)(1) (1994). However, no insured bank may "convert into a noninsured bank or institution" without the prior written consent of the FDIC. 12 U.S.C. § 1828(i)(3) (1994).

Termination of insured status is not a prerequisite to liquidating a bank. The grounds for FDIC consent in § 1828(i)(4) are relevant only if the bank planned to continue operating without FDIC insurance. Thus, the statement of the bank that

> voluntary termination of the banks [sic] insured status, however, would result in the *automatic forfeiture of the charter of the bank,* and the bank would be liquidated and dissolved either voluntarily by its board of directors under the supervision of the Department of Banking, or involuntarily by the Department "as in cases of insolvency"

(emphasis in original), brief for appellee bank at 18-19, is a misstatement of Neb. Rev. Stat. § 8-702(5) (Reissue 1997). While that statute reads that "[t]he charter of any banking institution which fails to comply with the provisions of this section shall be automatically forfeited and such banking institution shall be liquidated and dissolved . . . ," § 8-702(3) specifically provides that state banks may continue operations without FDIC insurance provided they prominently advertise that they are not so protected.

Moreover, the argument that involuntary dissolution of the bank would change the control of the banking corporation and is thus prohibited without the prior consent of the FDIC constitutes a misreading of 12 U.S.C. § 1817(j)(1) (1994). That section refers to one acquiring control of a depository institution, which is not applicable to a dissolution proceeding. Federal banking law, particularly with reference to the FDIC, focuses on the handling of insolvent banks. The court was not directed to, nor have I found any federal statutory language that regulates procedures when a solvent bank goes through involuntary dissolution, or under the new terminology of our corporation act, judicial dissolution.

Thus, Nebraska law is not preempted by federal law in the area of the involuntary dissolution of a banking corporation that is unrelated to insolvency.

As we all know, summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and the moving party is entitled to judgment as a matter of law. *Chalupa v. Chalupa, ante* p. 59, 574 N.W.2d 509 (1998); *Bargmann v. Soll Oil Co.*, 253 Neb. 1018, 574 N.W.2d 478 (1998). Inasmuch as the shareholder dissolution provisions of the corporation act apply to banking corporations, the bank is not entitled to judgment as a matter of law.

Accordingly, I would reverse the judgment of the district court and remand the cause for further proceedings.

WHITE, C.J., joins in this dissent.

134

WHITE, C.J., dissenting.

I agree with the dissent of Justice Caporale. I write separately to point out that a person who claims injury to his property by reason of the oppressive acts of others is denied relief in apparent violation of the Bill of Rights, Neb. Const. art. I, § 13, which provides, "All courts shall be open, and every person, for any injury done to him in his lands, goods, person or reputation, shall have a remedy by due course of law, and justice administered without denial or delay."