REQUESTED BY: Peter M. Graff, Director Department of Banking and Finance
You have asked two questions relating to the formation and membership of central credit unions in this state. The first
question posed is whether more than one central credit union can be chartered by the State of Nebraska under the provisions of the Credit Union Act, Neb. Rev. Stat. §§ 21-1701 to 21-17,116
(1997). It is our opinion that the statutory provisions authorize the formation of one or more central credit unions chartered by the State of Nebraska.
By way of background, central credit unions may be formed by credit unions organized and existing under the Credit Union Act. The membership is broad-based and includes state and federally chartered credit unions, certain organizations, and employee groups. You have related that a state chartered central credit union is operating in Omaha, Nebraska.
At the outset, we point out that the legislative intent is not clearly manifested in the statutory provisions nor is any found in the legislative history with respect to the issues you have raised. The formation requirements of a central credit union are generally described in the statutes in a singular sense. Neb. Rev. Stat. § 21-1752 (1997) in particular part provides:
 Credit unions organized and existing under the Credit Union Act may organize and have membership in a central credit union to which federal credit unions organized and operating in this state may belong and in which officials of both such credit unions may have membership. . . . (Emphasis added).
Other provisions of the Credit Union Act relating to a central credit union use the singular number with reference to the organizational requirements. See Neb. Rev. Stat. §§ 21-1753
to 21-1756 (1997).
While the statutory language refers to "a central credit union" in the singular, we think the meaning extends to more than one central credit union. It is a recognized principle of statutory construction that singular words may extend and be applied to several persons or objects. See, e.g., Lux v. MentalHealth Board of Polk County, 202 Neb. 106, 274 N.W.2d 141
(1979); Moser v. Turner, 180 Neb. 635, 144 N.W.2d 192 (1966). This rule has been codified in Neb. Rev. Stat. § 49-802
(1993), which in material part states:
 Statutes; general rules of construction. Unless such construction would be inconsistent with the manifest intent of the Legislature, rules for construction of the statutes of Nebraska hereinafter shall be as follows:
 . . . (6) Singular words may extend and be applied to several persons or things as well as to one person or thing.
Thus, the use of singular words in the statutes does not limit the formation of a central credit to one such entity. This conclusion is supported by the fact that the provisions of the Credit Union Act relating to the formation of "a credit union" also employ singular words. See Neb. Rev. Stat. § 21-1724
(1997) (authorizing the organization of "a credit union"). However, the provisions of the Credit Union Act have long been interpreted and applied to permit the organization of multiple credit unions and, indeed, credit unions have been organized throughout the state. It is our view that the consistent application of the provisions of the Credit Union Act support the formation and organization of more than one central credit union.
The second question you ask is whether credit union and small employee groups "must" choose a single central credit union to belong to or whether a credit union may belong to multiple central credit unions at the same time. After review, we conclude credit unions and certain employee groups are limited to membership in one central credit union.
As we have pointed out above, the statutory language provides little indicia as to the number of central credit unions that may be organized. Similarly, the statutory provisions and history of the Act do not address multiple membership issues. Our conclusion, in part, is based on the language used in §21-1752 which in relevant part provides:
. . . Organizations which are organized for the purpose of furthering credit union activities and their employees may have membership in such credit union. Small employee groups of fifty or more employees have a common bond of occupation whose probability of a successful operation would be limited because of the lack of adequate membership may join as a group in the central credit union and become members of that credit union with all the rights existing under the act.
It seems to us that the phrases, "membership in such credit union," and "may join . . . in the central credit union and become members of that credit union . . ." have reference to a particular credit union and thus restricts membership to one central credit union. As noted above, this interpretation is consistent with the application of the other provisions of the Act.
Our conclusion is also based on the concept of "common bond" requirements for membership in a particular credit union. Neb. Rev. Stat. § 21-1743 (1997) in part states:
 Membership; requirements. (1) . . . Credit union organization shall be limited to groups of both large and small membership having a common bond of occupation or association, including religious, social, or educational groups, employees of a common employer, or members of a fraternal, religious, labor, form, or educational organization and the members of the immediate families of such persons.
 (2) A person having been duly admitted to membership, having complied with the Credit Union Act, the articles of association, and the bylaws, having paid the entrance fee, and having paid for at least one share, shall retain full rights and privileges of membership for life unless the membership is terminated by withdrawal or expulsion in the manner provided by the act.
Multiple membership in more than one central credit union would in a certain sense undercut the common bond requirements which generally restrict membership of individuals to one credit union.
In construing statutes, the courts determine and give effect to the purpose and intent of the legislature as ascertained from the entire language of the statute itself. Sanitary Imp. Dist.No. 1 of Fillmore County, Neb. v. Nebraska Public Power Dist.,253 Neb. 917, 573 N.W.2d 460 (1998); Abboud v. Papio-MissouriNatural Resources Dist., 253 Neb. 514, 571 N.W.2d 302 (1997). Further, components of a series or collection of statutes pertaining to certain subject matter may be conjunctively considered and construed to determine intent of the legislature so that different provisions of an act are consistent, harmonious and sensible. In re Involuntary Dissolution of Battle CreekState Bank, 254 Neb. 120, 575 N.W.2d 356 (1998); Slagle v. J.P.Theisen Sons, Inc., 251 Neb. 904, 560 N.W.2d 758 (1997).
Application of these accepted rules of statutory interpretation support the conclusion that more than one central credit union may be organized and that organizations and individuals described in § 21-1752 are limited to membership in one central credit union. To conclude otherwise would necessitate legislative clarification.
Sincerely,
 DON STENBERG Attorney General
 Fredrick F. Neid Assistant Attorney General
APPROVED BY:
Don Stenberg 
Attorney General