AL SCHMID AND DOROTHEA SCHMID, APPELLEES AND
CROSS-APPELLANTS, V. CLARKE, INC., A NEBRASKA CORPORATION,
AND ITS WHOLLY OWNED SUBSIDIARY, BANK OF PAPILLION,
APPELLANTS AND CROSS-APPELLEES.

515 N.W.2d 665

Filed May 13, 1994. No. S-92-311.

Gerald P. Laughlin and Jill Robb Ackerman, of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, for appellants.

Edward D. Hotz and Edith T. Peebles, of Zweiback, Hotz & Lamberty, P.C., for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, FAHRNBRUCH, and WRIGHT, JJ., and GRANT, J., Retired.

BOSLAUGH, J.

This case arose out of a controversy concerning the merger of Midlands Bancorp, Inc. (MBI), the holding company for Bank of the Midlands (Bank), and Clarke, Inc., the holding company for the Bank of Papillion.

In the spring of 1989, Bank and Bank of Papillion and MBI and Clarke drafted an agreement and plan of merger subject to MBI stockholder approval for the purchase of Bank by the

Bank of Papillion. MBI stockholders were to receive $3.75 per share of stock and an additional $1.50 per share if the stockholder signed a release and covenant not to compete.

The plaintiffs, Al and Dorothea Schmid, were shareholders of MBI. Al Schmid had been the president and chief executive officer of Bank for over 7 years until his termination in January 1988. Following his termination, Al Schmid worked for American National Bank (American) in Douglas and Sarpy Counties. In an effort to expand further into Sarpy County, American had offered to buy out Bank. A third-party evaluation of Bank valued its stock at between $5 and $5.50 per share. The board of Bank recommended that the shareholders not accept American's offer of $5 per share. The Schmids claim that the board elected not to sell to American because Al Schmid would have been appointed president of American's Sarpy County bank. American thereafter chartered and opened a new bank in Sarpy County with Al Schmid as its president. Clarke then offered to purchase MBI.

MBI notified its stockholders, including the Schmids, of the details of the proposal, and the stockholders voted to sell under the terms of the agreement. The Schmids did not appear or object at the stockholders' meeting where the decision to sell was made, claiming that their objection would have been fruitless. The Schmids did not sign the covenant not to compete, claiming that Al's employment with American was in violation of the agreement. Accordingly, they did not receive the additional $1.50 per share that the other stockholders received. They did, however, surrender their stock certificates to the Bank of Papillion later and received $3.75 per share.

The Schmids filed this action on October 23, 1990, against MBI, Clarke, and Bank of Papillion in the district court for Sarpy County. The Schmids sought recovery of $202,500 under theories of conspiracy, breach of fiduciary duty, restraint of trade, and contract, claiming that the covenant not to compete was unenforceable. The trial court dismissed each of the defendants as parties, including the directors of MBI who were added later, except Clarke and Bank of Papillion, stating that no grounds for liability had been shown against the individual defendants and that the other corporate defendants had been

merged out of existence. The trial court also ordered a directed verdict for each of the actions argued by the Schmids, but found, sua sponte, that "[Schmids have] a right to have fair value for [their] stock." The trial court then stated: "The issue that the jury is going to get is what is the fair value of his shares?"

The jury returned a verdict for the defendants, and the Schmids moved for a judgment notwithstanding the verdict. The trial court granted the motion based on its finding that the covenant not to compete was invalid as a matter of law. Without further explanation, the trial court held that the Schmids were entitled to recover an additional $1.50 for each of their shares.

The appellants, Clarke and Bank of Papillion, contend that the trial court erred in granting a judgment notwithstanding the verdict, in submitting to the jury the question of fair value, in giving incorrect jury instructions, and in denying their motion for directed verdict.

The Schmids cross-appeal and assert that the trial court erred in granting directed verdicts on the original causes of action and in dismissing the corporate defendants because of the merger.

We find that the trial court erred in denying the defendants' motion for directed verdict. Because this finding is dispositive, we need not address the other assignments of error.

In order to sustain a motion for directed verdict, the trial court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw only one conclusion. In considering the evidence for the purpose of a motion for directed verdict, the party against whom the motion is directed is entitled to the benefit of all proper inferences which can be deduced therefrom. If there is any evidence in favor of the party against whom the motion is made, the case may not be decided as a matter of law. *Macholan v. Wynegar, ante* p. 374, 513 N.W.2d 309 (1994); *Baker v. St. Paul Fire & Marine Ins. Co.*, 240 Neb. 14, 480 N.W.2d 192 (1992).

The trial court found that since the covenant not to compete was unenforceable, as a matter of law reasonable minds could conclude only that the Schmids were entitled to collect

everything that the other shareholders had collected as a matter of law. Because we find that the Schmids had waived their claim that the terms of the merger—including the terms of the covenant not to compete—were unfair, we need not address the other assignments of error and the accuracy of the trial court's reasoning.

In March 1989, the Schmids received notice of the terms of the proposed merger and of the meeting at which the vote to merge was held. The Schmids did not attend the meeting either to object or to vote. In September 1989, the Schmids tendered their shares for payment, which was received in November of that year. This action was not brought until almost a year after the Schmids received payment for their shares. The Schmids do not dispute any of these facts. Rather, the Schmids argue that they were not compelled by law to voice dissent from the merger during the time of the transaction.

The Schmids concede that under Neb. Rev. Stat. § 21-2079 (Reissue 1991), shareholders of a banking corporation, unlike ordinary business corporations, do not have the right to dissent from a merger and receive the fair market value for their shares. The Schmids claim that they did not need to object to the merger at the time of the merger because they alleged that the noncompetition agreement caused them to suffer a distinct injury. The Schmids argue that a shareholder who is singled out and subjected to unfair treatment can bring a direct action against the corporation. The Schmids then point to cases which state that a minority shareholder need not give notice of a direct suit or object to corporate action if the notice or objection would be unavailing. See, *Meyerson v. Coopers & Lybrand*, 233 Neb. 758, 448 N.W.2d 129 (1989); *E. K. Buck Retail Stores v. Harkert*, 157 Neb. 867, 62 N.W.2d 288 (1954).

This argument incorrectly assumes that the Schmids' only recourse was to the corporation. The Schmids had the opportunity to object to the Department of Banking and Finance about the terms of the merger. Under Neb. Rev. Stat. § 8-122 (Reissue 1991), the Department of Banking and Finance is required to hold a public hearing to determine, among other things, the integrity of the parties applying for the merger. The legislative history explains that the Department of

Banking and Finance has the authority to consider the fairness of a merger to minority stockholders. Banking Committee Hearing, L.B. 916, 86th Leg., 2d Sess. 48 (Feb. 11, 1980). The Schmids complain that they were subject to the treatment that the banking committee is supposed to prevent, but they sat on their rights and did not avail themselves of the opportunity to voice their concerns. They cannot now attempt to circumvent the statutory scheme and claim an additional benefit from the merger after its completion.

The weight of authority supports this conclusion. In *Dold Packing Co. v. Doermann*, 293 F. 315 (8th Cir. 1923), the shareholders of a corporation attempted to cancel a lease on the grounds that the corporation did not notify the shareholders of the meeting at which the lease was discussed, despite the fact that the shareholders had known of the lease for over a year. The U.S. Court of Appeals for the Eighth Circuit held that where a party doing business with a corporation had expended time and money in reliance on the actions of the corporation, the stockholders were estopped from denying those actions and were held to have acquiesced in those actions. The court refused to set aside the lease.

In a case which was analogous to this case, the U.S. Court of Appeals for the District of Columbia held that minority shareholders of an acquired corporation who felt that they had not received an " 'arms-length' " price for their shares in a merger should have challenged the merger before it was completed. *Nerken v. Standard Oil Co. (Indiana)*, 810 F.2d 1230, 1233 (D.C. Cir. 1987). The court stated that "[b]y failing to oppose the merger [the shareholders] waived any claim that they were being injured by [the acquiring corporation's] alleged bad faith of which they were fully aware at the time." *Id*. The court held that the shareholders were estopped from claiming bad faith, and upheld the dismissal of the case.

At the close of testimony in the present case, the defendants made a motion for directed verdict on the grounds that no cause of action was pled or proved. Although the defendants did not move for a directed verdict on the grounds of estoppel and waiver, those theories were raised on the first day of the trial as a proposed jury instruction. The trial court should have ordered

the directed verdict on the basis of waiver and estoppel.

Ordinarily, a motion for directed verdict should state the specific grounds therefor. Neb. Rev. Stat. § 25-1315.01 (Reissue 1989). However, this court has held that where proof relating to a specific issue is so clear and convincing that reasonable minds cannot reach different conclusions, it is the duty of the trial court to dismiss the jury and enter judgment in accordance with the evidence. *Swink v. Smith*, 173 Neb. 423, 113 N.W.2d 515 (1962).

We find that the proof of waiver and estoppel meets the standard for a directed verdict. In *Five Points Bank v. Scoular-Bishop Grain Co.*, 217 Neb. 677, 681, 350 N.W.2d 549, 552 (1984), this court found that

> [w]aiver has been defined as a voluntary and intentional relinquishment or abandonment of a known existing legal right, advantage, benefit, claim, or privilege, which except for such waiver the party would have enjoyed; the voluntary abandonment or surrender, by a capable person, of a right known by him to exist, with the intent that such right shall be surrendered and such person forever deprived of its benefits; or such conduct as warrants an inference of the relinquishment of such right; or the intentional doing of an act inconsistent with claiming it.

The actions of the Schmids were clearly inconsistent with their desire to object to the terms of the merger. We find as a matter of law that the parties to the merger were warranted in inferring that the Schmids had waived their objections.

Our finding that the Schmids were estopped from objecting to the terms of the merger renders the remaining assignments of error by both parties immaterial. The judgment is reversed, and the cause is remanded to the district court with directions to enter judgment for the defendants dismissing the petition.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.