RAMONA HILL, APPELLEE, V. CITY OF LINCOLN, A NEBRASKA MUNICIPAL CORPORATION, APPELLANT.

541 N.W.2d 655

Filed January 12, 1996.   No. S-94-246.

David C. Mussman, of Erickson & Sederstrom, P.C., for appellant.

David Geier, of Healey & Wieland Law Firm, for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

WHITE, C.J.

Ramona Hill, plaintiff–appellee, brought this action pursuant to the Political Subdivisions Tort Claims Act, Neb. Rev. Stat.

§§ 13-901 to 13-926 (Reissue 1991). In her amended petition, Hill alleged that she tripped and fell on a defective sidewalk that was adjacent to property owned by Lincoln Electric System (LES), an electric generation and distribution system operated by the City of Lincoln, Nebraska (the city). Hill alleged that her injuries were a result of the negligence of the city, doing business as LES. The city moved for a directed verdict at the end of Hill's presentation of evidence. The district court took the motion under advisement, and the city rested without presenting evidence. The district court later denied the city's motion, held in favor of Hill, and awarded her $7,640.17 in damages. The city appeals.

The city assigns as error (1) the district court's failure to dismiss Hill's amended petition in its favor and (2) the district court's failure to find in favor of the city. In support of the assignment of the court's failure to dismiss the amended petition, the city argues that (1) the court erred in failing to dismiss Hill's amended petition in favor of the city by its determination that a vertical change of one-half inch or more constituted a defect in a sidewalk that gave rise to a duty of repair on the part of LES, (2) the court erred in failing to dismiss the amended petition by its determination that § 13-915 was not applicable, (3) the court erred in failing to dismiss by its determination that Hill's negligence was only slight, and (4) the court erred in failing to dismiss the amended petition by its failure to determine that Hill assumed the risk of injury.

Since we find that it was proper for the court to deny the city's motion for directed verdict and that the evidence supports a finding in favor of Hill, we affirm.

On March 4, 1991, Hill fell on a city sidewalk while walking north along 56th Street near the intersection of 56th and Garland Streets. The abutting landowner was the city, doing business as LES. Hill testified at trial that she was walking at a leisurely pace with her husband, both talking to her husband and looking where she was walking. She testified that "[w]e were walking along and all of a sudden I was laying on the ground." When she fell, her chin hit the concrete first, while her arm was folded under her body. Among other injuries, she lacerated her chin and fractured her arm.

Immediately prior to tripping, Hill noticed a surface crack within the sidewalk section and a red X painted on the sidewalk. Prior to falling, she did not notice any vertical unevenness where the two sidewalk sections abutted. After she fell, she and her husband looked at the sidewalk and noticed an elevation in the sidewalk of about 1 inch or more. Hill believed she tripped on the raised sidewalk section and not the crack within the section.

At the time Hill fell, the city was implementing the "Sidewalk Improvement Program." This program entailed city sidewalk inspectors surveying sidewalks and marking with red X's those sidewalks that needed repair. Landowners owning land abutting damaged sidewalks were then sent a notice stating that they were obligated to repair the sidewalks. The notice stated that the "goal of the program is to replace damaged sidewalks City-wide and install new ones where necessary." City sidewalk inspectors followed standard criteria regarding marking sidewalks for repair. At the time of Hill's accident, the standard for a vertical separation in the sidewalk was one-half inch or more. Harry Kroos, the sidewalk inspector at the time of the trial, testified that a goal of the program was to minimize the potential of a trip or fall by pedestrians on city sidewalks.

Hill knew about these red X's because she had seen them in her neighborhood and because a sidewalk section in front of her house had been marked with a red X. She also received a notice from the city concerning the repair of her sidewalk that was marked.

On June 20, 1990, over 8 months prior to Hill's fall, LES received a notice of sidewalk repair from the sidewalk inspector for the city. On July 6, LES requested an extension for repairs on the sidewalk. On July 18, the chief sidewalk inspector for the city granted LES' request to delay the repair until LES had finished construction on the abutting land.

Hill brought this action against the city under the Political Subdivisions Tort Claims Act, §§ 13–901 to 13–926. In its answer, the city raised the following affirmative defense: "Plaintiff had actual knowledge of the alleged defect in the sidewalk in question at the time of her accident, and an alternate safe route was available and known to the Plaintiff." The city

also raised contributory negligence and assumption of risk as affirmative defenses.

Pursuant to § 13–907, trial was held without a jury. After Hill's case in chief, the city moved to dismiss for failure of proof. In support of its motion, the city argued that § 13–915 barred Hill's recovery as a matter of law. Section 13–915 provides:

> In any suit brought pursuant to [the Political Subdivisions Tort Claims Act] and based upon an alleged defect in the construction or maintenance of a sidewalk, public building, or other public facility, an affirmative showing that the claimant had actual knowledge of the alleged defect at the time of the occurrence of the injury, and that an alternate safe route was available and known to the claimant, shall constitute a defense to the suit.

The city also argued in support of its motion that, as a matter of law, a 1–inch elevation in the sidewalk does not constitute a defect. The city also argued that Hill was contributorily negligent as a matter of law.

The court rejected the city's argument as to § 13–915, stating that it did not bar a claim as a matter of law, but instead allowed a defense to a plaintiff's claim under the Political Subdivisions Tort Claims Act. The court took the other two arguments concerning the motion for dismissal under advisement.

On February 7, 1994, the district court found in favor of Hill. The court held that the negligence of LES was attributable to the city. The court found the city grossly negligent and Hill only slightly negligent. In this order, the court also overruled the city's motion to dismiss at the close of plaintiff's case in chief. Concerning § 13–915, the court found that the evidence did not support this defense and that LES offered no proof that an alternative route could be used. The court awarded Hill $7,640.17 in damages.

The motion to dismiss for want of evidence is treated in a nonjury case as is the motion to direct a verdict in a jury case. See *In re Estate of Chaney*, 232 Neb. 121, 439 N.W.2d 764 (1989). When a trial court sustains a motion to dismiss, it resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw only

one conclusion. *Knaub v. Knaub*, 245 Neb. 172, 512 N.W.2d 124 (1994). In a court's review of evidence on a motion to dismiss, the nonmoving party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference which can be reasonably drawn therefrom. *Id.* If, on a motion to dismiss, there is any evidence in favor of the nonmoving party, the case may not be decided as a matter of law. *Id.*

On the other hand, in rendering judgment as the finder of fact, the trial court resolves credibility issues and weighs the evidence in the same manner as a jury, and its factual findings have the same effect as a jury verdict. *Ashland State Bank v. Elkhorn Racquetball, Inc.*, 246 Neb. 411, 520 N.W.2d 189 (1994). "In our review of a bench trial in a law action, the trial court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless they are clearly wrong." *Id.* at 414, 520 N.W.2d at 192.

This court's task is to first determine whether reasonable minds could differ based on the evidence presented, therefore creating a question of fact. If a question of fact exists, it was proper for the district court to deny the city's motion to dismiss. This court must then determine whether the trial court's findings were clearly wrong based on the evidence presented at trial.

The city contends that it was entitled to a dismissal because, as a matter of law, the alleged defect in the sidewalk did not give rise to a duty on the part of the city. The city bases its argument on this court's previous case *Doht v. Village of Walthill*, 207 Neb. 377, 299 N.W.2d 177 (1980). In *Doht*, this court found that a vertical raise of $1^1/_2$ to $1^3/_4$ inches did not constitute negligence on the part of the city. In essence, the city argues it has no duty to repair because the vertical disparity in the sidewalk was less than that found in *Doht*. The city misconstrues *Doht*.

*Doht* does not state a per se rule of law as to defective sidewalks. In *Doht*, this court stated that the city is not an ensurer of the safety of those using its sidewalks, but has a duty to use reasonable diligence to keep sidewalks in a reasonably safe condition for pedestrians. This court also stated, "The test

ordinarily is whether the inequalities are of such magnitude or extent as to be likely to cause injury to travelers who are proceeding with due care." *Doht*, 207 Neb. at 379, 299 N.W.2d at 179. In short, the *Doht* case concedes that it is unrealistic for a city to immediately discover every defect in its sidewalks. The *Doht* case reaches a compromise by still requiring reasonable diligence on the part of the city, but noting that the city is not the general insurer of pedestrians.

In determining whether the city had a duty in this case, we find Neb. Rev. Stat. § 15–734 (Reissue 1991) persuasive. Section 15–734 provides, in relevant part:

> The owner of property abutting on public streets is hereby primarily charged with the duty of keeping and maintaining the sidewalks thereon in a safe and sound condition . . . and in default thereof, upon notice to such abutting property owner as hereinafter provided, such abutting property owner shall be liable for injuries or damages sustained by reason thereof. The city is given general charge, control, and supervision of the streets and sidewalks thereof, and is required to cause to be maintained or maintain the same in a reasonably safe condition.

In this case, at the time of Hill's accident, the city set a $1/2$–inch standard as the criteria for determining what sidewalks needed repair throughout the city. One of the purposes behind the program was a safety concern—prevention of tripping and falling by pedestrians. Therefore, the city itself made a policy determination that a vertical raise of greater than one–half inch was likely to cause injury to pedestrians. The city discovered a defect and acknowledged its dangerous condition by marking the defect with a red X. The city then notified the abutting property owner, LES, of its duty to repair the sidewalk. LES is operated by the city. The city had a duty to repair the sidewalk. Therefore, the city was not entitled to a directed verdict.

Concluding that the city had a duty to repair, this court must determine whether the trial court was correct in its finding that the city was negligent based on the facts. The evidence sustains the trial court's finding that the city was negligent. In order to succeed in an action based on negligence, a plaintiff must

establish the defendant's duty not to injure the plaintiff, a breach of that duty, proximate causation, and damages. *S.I. v. Cutler*, 246 Neb. 739, 523 N.W.2d 242 (1994); *Merrick v. Thomas*, 246 Neb. 658, 522 N.W.2d 402 (1994).

Already concluding that the district court was correct in finding that the city had a duty, we must determine whether the court was clearly wrong in finding the city breached its duty. After LES was given notice to repair the sidewalk, it was given permission by the city sidewalk inspector to delay the repair of the sidewalk. No further action was taken by LES. LES claims that it was relieved of any liability to repair the sidewalk until it had completed construction on the abutting property. We will not allow the city to avoid being negligent by claiming it waived its own duty to repair when it acknowledges, according to its own safety criteria, that it was responsible for repairing a dangerously defective sidewalk.

The unrepaired sidewalk proximately caused Hill's injuries. Hill suffered damages. Therefore, the trial court was not clearly wrong in concluding that the city was negligent.

The city also contends that it was entitled to dismissal based on certain affirmative defenses stated in its answer, namely § 13–915, contributory negligence, and assumption of the risk. "The burden of proving an affirmative defense rests upon the defendant." *Production Credit Assn. v. Eldin Haussermann Farms*, 247 Neb. 538, 542, 529 N.W.2d 26, 30 (1995). " ' " 'The burden of proof means the duty resting on one party or the other to establish by a preponderance of the evidence an issue essential to recovery' " '." *Moudry v. Parkos*, 217 Neb. 521, 525, 349 N.W.2d 387, 390 (1984).

As stated earlier, no evidence was presented at trial by the city. Therefore, the only evidence that is useful to the city in support of these defenses is the testimony of Hill from her direct examination and cross–examination. To summarize, Hill testified that immediately prior to falling, she saw a red X and a surface crack in the sidewalk but that she never saw the vertical separation before the fall. She testified that she believed that she tripped over the crack. Also, she testified that she knew that the red X's indicated sections of the sidewalk which had been designated for repair and that she had seen red X's on

other sidewalk sections. Lastly, she testified that she was intermittently looking where she was walking while also looking at her husband.

Concerning the affirmative defense of § 13–915, the city failed in presenting sufficient evidence. As noted earlier, section 13–915 provides:

> In any suit brought pursuant to [the Political Subdivisions Tort Claims Act] and based upon an alleged defect in the construction or maintenance of a sidewalk, public building, or other public facility, an affirmative showing that the claimant had actual knowledge of the alleged defect at the time of the occurrence of the injury, and that an alternate safe route was available and known to the claimant, shall constitute a defense to the suit.

The only time § 13–915 was discussed by the city was when the city's counsel presented his argument in support of a directed verdict. The city's counsel stated:

> [Hill] testified specifically that she knew the purpose of these "X's," she saw the cracks in the sidewalk, she was on a leisure pace. She stated she — no particular destination in mind and, therefore, she falls directly within that statute and is barred from recovery, as a matter of law.

This brief argument by the city falls far short of proving it was entitled to judgment as a matter of law. "The burden of both pleading and proving affirmative defenses is upon the defendants, and when they fail to do so they cannot recover upon mere argument alone." *First Nat. Bank v. Benedict Consol. Indus.*, 224 Neb. 860, 865, 402 N.W.2d 259, 262 (1987).

The city also contends that it was entitled to dismissal because Hill was more than slightly contributorily negligent and therefore barred as a matter of law. At the time of Hill's accident, March 4, 1991, Nebraska had a slight/gross standard of comparative negligence found in Neb. Rev. Stat. § 25–21,185 (Reissue 1989). Section 25–21,185 reads, in relevant part, "[T]he fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery when the contributory negligence of the plaintiff was slight and the negligence . . . of the defendant was gross in comparison . .

. ." The district court judge found Hill only slightly negligent in comparison with the city's gross negligence.

"Contributory negligence is conduct for which the plaintiff is responsible, amounting to a breach of the duty imposed upon persons to protect themselves from injury, and which, concurring with actionable negligence on the part of the defendant, is a proximate cause of injury." *Schmidt v. Omaha Pub. Power Dist.*, 245 Neb. 776, 792, 515 N.W.2d 756, 766 (1994). Concerning the standard of care that a pedestrian should exercise when walking on public sidewalks, this court has stated:

> In the absence of notice or knowledge to the contrary, a pedestrian making normal use of the public sidewalk, night or day, has a right to assume that it is in reasonably safe condition, and while he must use ordinary care for his personal safety and make reasonable use of his faculties to avoid injury to himself, he is not required to keep his eyes fixed on the ground or to be on a constant lookout for danger.

*Crosswhite v. City of Lincoln*, 185 Neb. 331, 334, 175 N.W.2d 908, 910 (1970).

This court has held that "where the evidence shows beyond reasonable doubt that plaintiff's negligence was more than slight in comparison with that of the defendant the action should be dismissed or verdict directed." *Rogers v. Shepherd*, 159 Neb. 292, 297, 66 N.W.2d 815, 818 (1954). Based on the evidence concerning where Hill was looking and what she saw when she tripped, the city did not prove beyond a reasonable doubt that Hill's negligence was more than slight. Therefore, the district court was correct in denying the motion to dismiss.

Whether the evidence supported the district court's factual finding that Hill was only slightly negligent in comparison with the city's gross negligence requires more analysis. Hill testified that she was intermittently looking at the sidewalk and looking at her husband while walking. Following *Crosswhite*, this conduct by Hill met the appropriate standard of care if she did not have "notice or knowledge to the contrary." However, *Crosswhite*, although not explicitly stated, implies that a pedestrian will be subject to a higher standard of care if the

pedestrian has notice or knowledge that a sidewalk is dangerous.

No evidence was elicited as to how far in advance, in time or distance, Hill noticed the red X marked on the defective sidewalk section, except that she noticed it immediately prior to falling. Based on the evidence, it is not clear if Hill had any notice or sufficient notice for her to be subject to a higher standard of care than that set forth in *Crosswhite*. Therefore, the district court's determination that Hill was only slightly negligent cannot be said to be clearly wrong and will not be reversed.

The city also argues that the trial court erred in dismissing the action in its favor because it failed to find that Hill assumed the risk. The city contends that Hill knew of the danger, appreciated its dangerous nature, and deliberately exposed herself to that danger.

Although the city raised assumption of risk as an affirmative defense, it failed to argue assumption of risk as a specific ground for granting the directed verdict. Ordinarily, a motion for directed verdict should state the specific grounds therefor. Neb. Rev. Stat. § 25-1315.01 (Reissue 1989). However, this court has held that where proof relating to a specific issue is so clear and convincing that reasonable minds cannot reach different conclusions, it is the duty of the trial court to enter judgment in accordance with the evidence. *Schmid v. Clarke, Inc.*, 245 Neb. 856, 515 N.W.2d 665 (1994). This is not such a case.

In order to prevail on a theory of assumption of risk, the defendant has the burden to establish that the plaintiff (1) knew of the specific danger, (2) understood the danger, and (3) voluntarily exposed himself or herself to the danger that proximately caused the damage. *Sikyta v. Arrow Stage Lines*, 238 Neb. 289, 470 N.W.2d 724 (1991) (quoting *Mandery v. Chronicle Broadcasting Co.*, 228 Neb. 391, 423 N.W.2d 115 (1988)). See, also, Neb. Rev. Stat. § 25-21,185.12 (Cum. Supp. 1994). Hill testified that she did not see the actual danger that allegedly caused the injury—the raise in the sidewalk. In sum, based on the evidence, whether Hill assumed the risk could not be decided as a matter of law in favor of the city. Therefore, denying dismissal on grounds of assumption of risk was proper.

Moreover, the evidence in support of the city is insufficient to hold that the district judge was clearly wrong in his findings of fact.

For the foregoing reasons, the order of the district court is affirmed.

AFFIRMED.