MARSHA J. BLANCHARD, INDIVIDUALLY AND AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF MARY A. REARDON,
DECEASED, APPELLANT, V. CITY OF RALSTON, A POLITICAL
SUBDIVISION OF THE STATE OF NEBRASKA, APPELLEE.

559 N.W.2d 735

Filed February 7, 1997.    No. S-94-1142.

Mandy L. Strigenz and E. Terry Sibbernsen, of E. Terry
Sibbernsen, P.C., for appellant.

Eugene P. Welch and Francie C. Riedmann, of Gross &
Welch, P.C., for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, and GERRARD, JJ.

WRIGHT, J.

Marsha J. Blanchard, individually and as personal represen-
tative of the estate of Mary A. Reardon, commenced this inverse
condemnation action against the City of Ralston. The Douglas
County District Court denied Blanchard's claim for damages.
The Nebraska Court of Appeals reversed the judgment of the
district court and remanded the cause for a determination of
damages. See *Blanchard v. City of Ralston*, 4 Neb. App. 692,
549 N.W.2d 652 (1996). We granted the City's petition for fur-
ther review.

## SCOPE OF REVIEW

In an appellate review of a bench trial in a law action, the trial court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless they are clearly wrong. *Hill v. City of Lincoln*, 249 Neb. 88, 541 N.W.2d 655 (1996).

When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Lee Sapp Leasing v. Catholic Archbishop of Omaha*, 248 Neb. 829, 540 N.W.2d 101 (1995).

## FACTS

Blanchard was the sole heir to a house located in Ralston, Nebraska, which was previously owned by her mother, Reardon. After her mother's death, Blanchard lived in the house. She later moved to live with her husband and children in Valley, Nebraska. At the time Blanchard left the house in Ralston, the electricity and gas had been shut off and Blanchard had been given notice that the water was going to be shut off.

After she moved to Valley, Blanchard did not visit the house, and she heard nothing unusual concerning the house until December 1990, when she was informed by the Ralston Police Department that there had been some complaints concerning animal noises in the house. This situation was apparently resolved, and there were no more concerns with regard to the house until February 1991, when neighbors reported hissing noises coming from the house. The Ralston Police Department investigated and found that a water pipe had broken and leaked water into the basement. The police noticed fungal and mildew growth, which was apparently caused by the moisture. The police department concluded that the structure was a public health nuisance and so notified the mayor of Ralston on February 28, 1991. In response, on March 8, the mayor requested that a health inspector and a building inspector conduct inspections of the house.

Blanchard was not notified of the complaints, the alleged health nuisance determination, or the fact that inspections were being conducted in the house. The mayor testified that at the time she requested the inspections, she did not know who owned the house, nor had she made any inquiries regarding

ownership. Sometime thereafter, the mayor designated this responsibility to the city attorney. Prior to April 25, 1991, the mayor was told that the owner could not be located. The city attorney did not run a title search, but subsequently learned that there was in fact an estate proceeding.

On April 25, 1991, a health inspector and a building inspector examined the house. Both concluded that the house was a hazard. On that date, the police department called Blanchard's husband. The police apparently did not inform Blanchard's husband of the foregoing complaints and subsequent inspections, but directed Blanchard to call Connie Kompare at Ralston's city hall.

On April 29, 1991, Blanchard spoke with Kompare. Blanchard was told that there had been water damage to the house, but that she should not worry because the water had been shut off. Kompare informed Blanchard that there would be a meeting to discuss condemning the house, but did not explain why. Kompare did not tell Blanchard when the meeting would be held, but told Blanchard that if she wanted more information, she should contact the city attorney. Blanchard testified that she gave her address to Kompare at that time and that she told Kompare she had an interest in the property as the sole heir and personal representative of her mother's estate.

Blanchard made several attempts to contact the city attorney, but she did not recall whether she ever made contact. The city attorney testified that he had spoken with Blanchard on one occasion approximately 2 weeks prior to the eventual demolition of the house and that he was given Blanchard's address, but he did not write the address down.

On April 30, 1991, the Douglas County Health Department sent a letter to the City informing it that the house was a "public health hazard." Sometime before May 8, the mayor determined that the house was in such a condition that an emergency existed. Blanchard was not made aware of the health department's report or the mayor's determination.

At a city council meeting on May 7, 1991, demolition of the house was discussed. The city council determined that the procedure for demolition would consist of (1) posting notice of the demolition order on the house, (2) waiting 3 days, and (3)

demolishing the house. Blanchard was not informed of the May 7 meeting. On May 8, a notice of demolition was posted on the house stating that the owner of the house was required to remedy the odor and health-related hazards present in the house or demolish the house within 3 days, or the City would demolish the house. The notice also stated that an appeal of the decision to demolish the house and a request for a hearing on the decision could be filed with the city council within 10 days of the posting of the notice. Blanchard was not sent a copy of this notice.

Blanchard first learned of the demolition order on May 12, 1991, when a neighbor to the house in question told Blanchard that notice of the demolition had been posted on the house. The next morning, Blanchard attempted to enter the house, but was denied access and was told by the police that the house belonged to the City.

Blanchard then spoke with Kompare at the city clerk's office. Blanchard asked why the house had been condemned. Kompare simply referred her to the city attorney. Blanchard subsequently tried to contact the building inspector for more information, but he was out of town. Blanchard stated that she spent the rest of the afternoon trying to reach the city attorney. Eventually, Blanchard's friend Richard Medina was able to speak to the city attorney. Upon Medina's request, the city attorney told Medina that in order to appeal the demolition order, Blanchard would have to have an attorney file a notice of appeal. Blanchard was then given permission to enter the house in order to retrieve some estate papers.

Although the mayor admitted that by this time she was aware of Blanchard's interest in the house, no one contacted Blanchard between the time she inquired into the condemnation on May 13, 1991, and the hearing on May 16 regarding why the house had been condemned. Blanchard testified that she had no idea there were any concerns regarding structural problems with the house and that she thought, in accordance with the language of the posted notice, the City was only concerned with the odor.

Blanchard's attorney prepared a notice of appeal and request for a hearing regarding condemnation of the house, which he filed on May 15, 1991. Medina testified that Kompare told him

it was a waste of time to file an appeal. Blanchard was apparently given permission to enter the house to try to clean it up, but was unable to go to the house because one of her children was sick. Blanchard sent Medina in her place with a letter granting him permission to enter the premises. Medina testified that his purpose was to go through the house and remove the offensive odor "so that we could get permission to go in there and inspect the house and do what had to be done to get an extension there or reprieve on the demolition."

The hearing on the condemnation order was set for noon on May 16, 1991. Previously, the house had been scheduled for demolition on May 16 at 1 p.m. On the way to the hearing, Blanchard and her attorney noticed that demolition had already begun on the driveway. At the hearing, Blanchard's attorney requested that Blanchard be given 2 weeks to clean up the property. The request was not approved, and the house was completely demolished by 2:45 that afternoon.

Blanchard filed an inverse condemnation action, alleging that the City's actions violated Ralston Mun. Code §§ 9-401 through 9-406 because Blanchard had not been given proper notice or reasonable time to repair her property prior to demolition. The district court found that due to the condition of the house, an "immediate danger i.e. an emergency, existed." The court found that the notice afforded Blanchard was "less than perfect," but that Blanchard had received actual notice of the demolition in March or April 1991. The court held that the City had authority pursuant to its police power to order removal of the dangerous building, which had become a nuisance, without payment of compensation and without use of process of eminent domain, and the court dismissed Blanchard's inverse condemnation action.

The Court of Appeals held that while the City had the power to demolish the house, it did not provide Blanchard with proper notice prior to doing so. The Court of Appeals concluded that the demolition of Blanchard's house without proper notice violated her right to procedural due process and that, as a result, a taking occurred for purposes of an inverse condemnation action. The Court of Appeals reversed the district court's judgment and remanded the cause for trial on damages.

## ASSIGNMENTS OF ERROR

The City alleges in its petition for further review that the Court of Appeals erred (1) in ruling that although an emergency existed, Blanchard was entitled to due process; (2) in ruling that the due process afforded Blanchard was insufficient; and (3) in reversing the district court's judgment and remanding the cause for a determination of damages.

## ANALYSIS

It is undisputed that the City demolished Blanchard's house without instituting condemnation proceedings. In its order, the district court found that there was no question that an "immediate danger i.e. an emergency, existed." In an appellate review of a bench trial in a law action, the trial court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless they are clearly wrong. *Hill v. City of Lincoln*, 249 Neb. 88, 541 N.W.2d 655 (1996). We cannot say that this factual finding by the district court was clearly wrong. Therefore, the remaining issue before us is whether the City provided Blanchard with sufficient due process in light of such emergency.

Neb. Rev. Stat. § 18-1720 (Reissue 1991) provides that all cities have the power to "declare what shall constitute a nuisance, and to abate and remove the same." However, the protections of procedural due process attach whenever there has been a deprivation of a significant property interest. If such an interest is shown, due process requires notice and an opportunity to be heard that is appropriate to the nature of the case. *Howard v. City of Lincoln*, 243 Neb. 5, 497 N.W.2d 53 (1993). Ralston Mun. Code § 9-403 provides:

> UNSAFE BUILDINGS; DETERMINATION AND NOTICE. Whenever . . . the Governing Body shall be of the opinion that any building or structure in the Municipality is an unsafe building, he shall file a written statement to this effect with the Municipal Clerk. The Clerk shall thereupon cause the property to be posted accordingly . . . and shall serve written notice upon the owner thereof . . . . Such notice shall state that the building has been declared to be in an unsafe condition; and

that such dangerous condition must be removed or remedied by repairing or altering the building or by demolishing it; and that the condition must be remedied within sixty (60) days from the date of receipt.

Ralston Mun. Code § 9-405 provides:

UNSAFE BUILDINGS; EMERGENCY. Where any unsafe building or structure poses an immediate danger to the health, safety, or general welfare of any person or persons, and the owner fails to remedy the situation in a reasonable time after notice by the Building Inspector to do so, the Municipality may summarily repair or demolish and remove such building or structure.

Since the district court found that there was an emergency, we therefore consider whether the City, in accordance with Ralston Mun. Code § 9-405, gave Blanchard a reasonable time after notice to remedy the situation. On May 8, 1991, a notice was posted on the house which gave Blanchard 3 days to remedy the problem, but 10 days to appeal the decision to demolish. The evidence indicates that Blanchard learned of this notice late Sunday evening, May 12. From our review of the record, we conclude that the notice given to Blanchard did not comply with Ralston Mun. Code § 9-405, which specifically provides that the owner must remedy the situation in a reasonable time after notice by the building inspector to do so.

It is clear that 3 days was not an ample opportunity to do what was necessary to make the house safe or healthy. Moreover, such an extremely limited amount of time was not justified by the circumstances. In other words, 3 days was not "reasonable." Although it is not disputed that there existed an emergency situation, the record does not establish that the condition of the house required its immediate destruction.

It is apparent that the information Blanchard received failed to comport with Ralston Mun. Code § 9-405 insofar as it failed to truly notify her of the City's concerns. The record shows that Blanchard was not advised of the City's specific health concerns, nor was she remotely aware of what concerns might be considered until after the house had been condemned. In fact, the most detailed information given to Blanchard was in the language of the posted notice, which stated only that the occupant

or interested party had 3 days in which to remedy the "odor and health hazard present." As such, the notice given to Blanchard was not meaningful because it failed to adequately inform Blanchard of what the alleged health hazard was or how Blanchard could protect her interest. Any amount of time given to Blanchard to remedy the situation was futile because she was not informed as to what needed to be remedied. See *Hancock v. City Council of Davenport*, 392 N.W.2d 472 (Iowa 1986). Our finding that Blanchard did not receive meaningful notice is also supported by the fact that although Blanchard was given an opportunity to be heard, demolition of the property began prior to the time of the hearing.

For the reasons set forth herein, we find that the notification given to Blanchard did not satisfy the requirements of due process insofar as it failed, under the circumstances, to give Blanchard a reasonable amount of time and a meaningful notice of the alleged hazard so that she could have an opportunity to remedy the situation and defend her case.

We therefore affirm the decision of the Court of Appeals, which reversed the judgment of the district court and remanded the cause for a determination of damages.

AFFIRMED.