**Richard M. HEDRICK, Plaintiff,**

v.

**Allen PFEIFFER, Gary A. Janssen, and Donald Dunn, Defendants.**

No. 4:97CV3301.

United States District Court, D. Nebraska.

June 11, 1998.

Richard M. Hedrick, Lincoln, NE, pro se.

Jane F. Langan, Rembolt Ludtke & Berger, Lincoln, NE, for defendants.

## MEMORANDUM AND ORDER

KOPF, District Judge.

Plaintiff Richard M. Hedrick (Hedrick) brings this 42 U.S.C. § 1983 action against the city attorney for Waverly, Nebraska, and two other city employees in their individual and official capacities, asserting that the defendants unlawfully and without due process seized Hedrick's property by placing hasps and locks on the doors of a house belonging to Hedrick and allowing Hedrick to enter the house only with permission of the defendants. Pending before the court is Defendants' motion to dismiss (filing 10), which has been converted into a motion for summary judgment pursuant to Fed.R.Civ.P. 12(b) (filings 12, 14), and Hedrick's "motion for cross claim of summary judgment" (filing 18).

Defendants first argue that Hedrick's complaint fails to state a claim upon which relief can be granted because Hedrick was afforded procedural due process by virtue of the nuisance abatement procedure followed by the City of Waverly and because any seizure of Hedrick's property was reasonable. Defendants also argue that Hedrick's complaint fails to state a claim upon which relief may be granted because Defendants are entitled to qualified immunity. (Defs.' Br.Supp.Mot. Dismiss; Defs.' Br. Opp'n Pl.'s Mot.Summ.J.) Hedrick emphasizes that his claim is related to the placing of hasps and locks on the house which stood on his property, not the eventual abatement of the nuisance performed by the city. (Filing 20, ¶¶ 8, 10, Aff. Richard Hedrick.)

## I. UNDISPUTED MATERIAL FACTS

Upon consideration of the parties' evidentiary submissions (filings 11, 20, 27, 28), I find the undisputed material facts to be as follows:

1. Plaintiff Richard M. Hedrick is the owner of record of real property located at 11605 North 141st Street in Waverly, Nebraska, which is legally described as: "Lot 137 I.T. in the SE 1/4 of the NW 1/4 of Section 16, Township 11 North, Range 8 East, Lancaster County, Nebraska." (Filing 27 ¶ 5, Supp.Aff. Shirley Bruhl, City Clerk & Treasurer for City of Waverly.)

2. The City of Waverly has a population of approximately 2000 and is a city of the second class pursuant to Neb.Rev.Stat. § 17–101 (Michie 1995). Hedrick's property is located within one mile of the Waverly corporate limits. (Filing 27 ¶¶ 6 & 7, Supp.Aff. Shirley Bruhl.)

3. Personnel from the City of Waverly, its Board of Health, and the Lancaster County Health Department inspected Hedrick's property and determined that a nuisance existed on the property. (Filing 11, Ex. 1 ¶ 6, Aff. Shirley Bruhl.) These city and county representatives found piles of items laying about Hedrick's property and various structures which constituted violations of the Waverly Municipal Code, including 33 wrecked or abandoned automobiles or motorcycles; miscellaneous unused machinery; five refrigerators which could not be unlocked from the inside; two sheds with rotting roofs; eight air-conditioning units; lead-acid vehicle batteries; large accumulations of combustible materials stored inside metal bins and out buildings; and used engine oil filters. As a result of this inspection, the Lancaster County Health Department sent a letter dated September 6, 1996, to Shirley Bruhl, City Clerk and Treasurer for the City of Waverly, outlining the above violations and stating:

> The entire property has individual piles and commingled piles of weathered lumber, building material, tin, tires, wire, concrete blocks, brick, tin cans, barrels, corrugated metal, scrap iron, vehicle parts, mattresses, clothing, plaster, appliances, electronic components, and farm machinery creating conditions suitable for harborage and breeding of flies, mosquitos and rats. The general appearance of the property is so unsightly as to depreciate property values in the vicinity. The property resembles a landfill.

(Filing 11, Ex. 2.) The letter stated that, due to the "unlawful depositing" of the above items and the resulting health, safety, and environmental hazards to the community of Waverly, Nebraska, "the property is declared a public nuisance and you are ordered to abate the offending conditions at once." (Filing 11, Ex. 2.)

4. On September 6, 1996, Waverly City Attorney Donald Dunn prepared a letter addressed to Richard Hedrick that advised him of the Lancaster County Board of Health's findings; declared Hedrick's property to be a "public nuisance"; advised Hedrick that if he failed to remedy the conditions or appeal the nuisance designation by September 15, 1996, the Lancaster Board of Health would notify the Waverly City Council, which would then set a hearing at which Hedrick would be required to show cause why the conditions should not be found to be a public nuisance and be remedied; and warned Hedrick that if the city council found the conditions on his property to be a public nuisance after notice and hearing, the city had the authority to abate the nuisance and bill him for the costs of abatement or to levy the costs as an assessment against the property. The letter stated that it was being sent to Hedrick via certified mail pursuant to section 4–303 of the Waverly Code, and that a notice of public nuisance describing the conditions on Hedrick's property would be published in the Lincoln Journal–Star newspaper. (Filing 11, Ex. 3.) The notice of public nuisance was published in the Lincoln Journal–Star on September 10, 1996. (Filing 11, Ex. 3.)

5. The certified letter dated September 6, 1996, to Hedrick from Waverly City Attorney Donald Dunn was returned unclaimed after three delivery attempts by the United States Post Office. (Filing 11, Ex. 5, Oct. 7, 1996, Minutes from Waverly City Council Meeting; Filing 20 ¶ 5, Aff. Richard Hedrick.)

6. Hedrick failed to take any action in response to the notice of public nuisance which appeared in the Lincoln Journal–Star, nor did he appeal the public-nuisance deter-

mination by September 15, 1996. (Filing 11, Exs. 1 ¶ 8.)

7. On October 1, 1996, Hedrick received personal service of a notice of hearing before the Waverly City Council on October 7, 1996, regarding the condition of Hedrick's property as a public nuisance. The letter advised Hedrick that he would be required to show cause why the conditions on his property should not be found to be a public nuisance and remedied. The letter again advised Hedrick that if the city council found his property to be a public nuisance after the hearing, it could abate the nuisance and bill Hedrick for the costs of doing so. (Filing 11, Exs. 4, 5; Filing 20 ¶ 6, Aff. Richard Hedrick.)

8. On October 7, 1996, the Waverly City Council held a show-cause hearing at which the council received evidence as to the condition of Hedrick's property and viewed videotape footage of the property which had been taken by officers of the Lancaster County Health Department. Hedrick was present at the hearing. (Filing 11, Ex. 1 ¶¶ 9–11, Ex. 5; Filing 20 ¶ 6, Aff. Richard Hedrick; Filing 27, Ex. 12, Videotape.)

9. After the close of the public comment portion of the October 7, 1996, Waverly City Council meeting, the council passed Resolution Number 96–16, which declared Hedrick's property a public nuisance pursuant to the Waverly Municipal Code and required Hedrick to abate the nuisance on his property "immediately ... with substantial progress, as reasonably determined by the Mayor and City Superintendent within one week and such abatement to be completed by not later than November 7, 1996." (Filing 11, Ex. 1 ¶ 12, Exs. 5 & 9.) Hedrick did not appeal this determination. (Filing 11, Ex. 1 ¶ 14; Filing 20 ¶¶ 8, Aff. Richard Hedrick.)

10. On October 31, 1996, Hedrick discovered that the doors on a house on his property had been secured with hasps and padlocks. Although the City of Waverly is uncertain of the date on which Hedrick's house was locked, the city admits that its "personnel"[1]

put locks on Hedrick's house to secure the property "[a]fter Plaintiff failed to comply with the proposed abatement of the nuisance." The parties agree that Hedrick could have gained access to the house by requesting entrance from city personnel. (Filing 28, Interrog. Nos. 3 & 8; Filing 27 ¶ 10, Supp.Aff. Shirley Bruhl, City Clerk & Treasurer for City of Waverly; Filing 20 ¶ 11, Aff. Richard Hedrick; Filing 27 ¶ 10; Filing 1, Complaint.) The videotape which was shown at the city council hearing indicates that the house on Hedrick's property was a rental house that had been rented to a family less than a month before the nuisance was discovered, and the family was in the process of moving out when the tape was made. (Filing 27, Ex. 12, Videotape.)

11. On December 20, 1996, and after Hedrick had failed to comply with the city council's resolution, the City of Waverly contracted with a third party to enter onto Hedrick's property and abate the nuisance, thereby incurring $8,500 in clean-up expenses. (Filing 11, Ex. 1 ¶ 15.)

## II. STANDARD OF REVIEW

The parties' motions address both the merits of Hedrick's claims and the individual defendants' entitlement to qualified immunity.

Summary judgment should be granted on the merits only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will

---

1. The evidence in the record is unclear regarding whether the defendants named in this lawsuit actually placed the locks on Hedrick's rental house or made the decision to do so. However, I have construed this ambiguity in Hedrick's favor, and have assumed that all defendants are City of Waverly employees who locked Hedrick's rental house during the period in which Hedrick was to be abating the nuisance on his property.

properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

■ Government officials who are sued in their individual capacities for damages under civil rights laws for their performance of discretionary functions are entitled to qualified immunity from suit if they prove that their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). When summary judgment is sought on qualified immunity, there are two parts to the analysis when the material facts are not in dispute.

First, one decides whether the law was "clearly established." "Clearly established" means that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The specific act in question need not previously have been declared unlawful, but "in the light of pre-existing law the unlawfulness must be apparent." *Id.*

Second, assuming the law is clearly established and the facts are undisputed, the "relevant question" then "is the objective (albeit fact-specific) question" of "whether a reasonable [defendant] could have believed [the challenged conduct] to be lawful, in light of clearly established law and the information the [defendant] possessed." *Id.* at 641, 107 S.Ct. 3034. The defendant's subjective beliefs about the challenged conduct "are irrelevant." *Id.* I must grant summary judgment on qualified immunity grounds " 'if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact ... violated clearly established law.' " *Johnson v. Boreani,* 946 F.2d 67, 70 (8th Cir.1991) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)).

### III. DISCUSSION

As stated above, Hedrick raises procedural due process and Fourth Amendment claims based on his allegation that the city attorney for Waverly, Nebraska, and two other city employees placed hasps and locks on all doors of a rental house owned by Hedrick and allowing Hedrick to enter the house only with permission of the defendants. City of Waverly personnel secured the rental house after Hedrick failed to comply with the Waverly City Council's October 7, 1996, resolution which declared Hedrick's property a public nuisance under the city code and which required Hedrick to abate the nuisance *"immediately,"* with "substantial progress, as reasonably determined by the Mayor and City Superintendent[,] within one week and such abatement to be completed by not later than November 7, 1996." (Filing 11, Ex. 9 (emphasis in resolution).)

### A. Procedural Due Process

■ Prior to the making of a governmental decision which deprives an individual of a liberty or property interest, procedural due process generally requires a hearing— which is held at a meaningful time in a meaningful manner—before an impartial decision maker. *Samuels v. Meriwether,* 94 F.3d 1163, 1166 (8th Cir.1996) (citing *Mathews v. Eldridge,* 424 U.S. 319, 332–33, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).

> We have held that where a property owner is given written notice to abate a hazard on his or her property and has been given an opportunity to appear before the proper municipal body considering condemnation of the property, no due process violation occurs when the municipality abates the nuisance pursuant to the condemnation notice.

*Samuels,* 94 F.3d at 1166–67. *See also Hagen v. Traill County,* 708 F.2d 347, 348 (8th Cir.1983) (in nuisance abatement case, county and city officials provided adequate procedural protection to plaintiff prior to destruction of his property when officials gave plaintiff oral and written notice of the hazard, plaintiff attended meetings to discuss the issue, and plaintiff failed to take any action to abate the nuisance).

■ Assuming the City of Waverly's placement of hasps and locks on the doors of the rental house located on Hedrick's property constituted a deprivation of a significant

property interest such that the protections of procedural due process attached, the issue is whether Hedrick received notice and an appropriate opportunity to be heard prior to the locking of the property. *Blanchard v. City of Ralston*, 251 Neb. 706, 711, 559 N.W.2d 735, 739 (1997) (in appeal from ruling in inverse condemnation action, court stated that procedural due process protections attach upon deprivation of significant property interest, despite Nebraska statute which gives cities power to declare and abate nuisances).

The City of Waverly secured the rental house on Hedrick's property sometime before October 31, 1996, because Hedrick failed (in the city's view, as stated in the city's October 7, 1996, resolution) to comply with the proposed nuisance abatement. As stated in the resolution, "substantial progress" was to be made by Hedrick to abate the nuisance within one week after October 7, 1996 (with total abatement to be completed by November 7, 1996). Before the City of Waverly secured Hedrick's rental house, the city provided, and Hedrick received, notice of the nuisance and the hearing thereon; Hedrick attended the October 7, 1996, Waverly City Council meeting at which Hedrick was advised of the specific nature of the nuisance on his property and was given an opportunity to show cause why the condition of his property was not a nuisance; and Hedrick was advised of the city resolution declaring his property a nuisance and setting deadlines for abatement of that nuisance.

From the notices provided to Hedrick and the Waverly City Council hearing which addressed the state of Hedrick's property, it was obvious that abatement would involve the removal of 33 wrecked or abandoned automobiles, refrigerators, air-conditioning units, heavy machinery, and a myriad of other items that made the property look like a "landfill," as well as the repair or destruction of rotting sheds. In its notices to Hedrick, the city did not specify what precautions it would take to protect public safety between October 7 and November 7, 1996, while Hedrick was to be abating the widespread nuisance on his property. However, locking the rental house that sat in the midst of the landfill conditions on Hedrick's property (while still allowing Hedrick access to the house by requesting a key) during Hedrick's abatement period was logically consistent with, and part of, the abatement process about which Hedrick had been notified and given an opportunity to comment upon.

Therefore, no procedural due process violation occurred.

### B. Fourth Amendment

A "seizure" of property occurs when " 'there is some meaningful interference with an individual's possessory interests in that property.' " *Soldal v. Cook County*, 506 U.S. 56, 61, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)). *See also Samuels*, 94 F.3d at 1167. "[I]n determining whether a government seizure violates the Fourth Amendment, the seizure must be examined for its overall reasonableness" based on a careful balancing of private and governmental interests. *Id.; Hroch v. City of Omaha*, 4 F.3d 693, 697 (8th Cir.1993) (section 1983 action alleging violation of procedural due process and Fourth Amendment when city demolished buildings not included in notice of condemnation; because city's conduct was reasonable in light of careful balancing of private and governmental interests, implementation of city's condemnation order not violative of Fourth Amendment).

In *Samuels*, the Eighth Circuit Court of Appeals analyzed whether a city's destruction of the plaintiffs' building violated the procedural due process clause of the Fourteenth Amendment and the reasonableness requirement of the Fourth Amendment. After finding no procedural due process violation, the court addressed the Fourth Amendment claim, finding that "an abatement carried out in accordance with procedural due process is reasonable in the absence of any factors that outweigh governmental interests." *Id.* at 1168. Because the city in *Samuels* acted pursuant to a noticed hearing and resolution and the plaintiffs failed to raise "any factual issues that advance a valid claim of unreasonable behavior on the part of the City or its agents," the court found no violation of the Fourth Amendment. *Id.*

Hedrick's complaint and affidavit in support of his motion for summary judgment indicate that he is not challenging the City of Waverly's authority to abate the nuisance on Hedrick's property[2]; he instead challenges the placement of locks on the rental house that is situated on that property. (Filing 1, Complaint; Filing 20, ¶¶ 8, 10, Aff. Richard Hedrick.) However, in making such a challenge, Hedrick does not establish any facts on which a "valid claim of unreasonable behavior on the part of the City or its agents" can be made with regard to the placement of hasps and locks on Hedrick's rental house. To the contrary, the City of Waverly has established that "City personnel secured the doors on the house [on Hedrick's property to] protect the public and to prevent injury." (Filing 27 ¶ 10, Supp.Aff. Shirley Bruhl.) Hedrick's right to rent his property as he sees fit is clearly outweighed by the obvious danger to anyone who might dare to enter Hedrick's property and be confronted with the hazardous conditions existing thereon and the city's interest in protecting the public from a declared nuisance until it is abated. (Filing 27, Ex. 12, Videotape.)

Because I have found that the City of Waverly personnel who are sued in this action acted pursuant to a noticed hearing and city council resolution that complied with procedural due process requirements and Hedrick has failed to raise "any factual issues that advance a valid claim of unreasonable behavior on the part of the City or its agents," I find the defendants' actions reasonable and, therefore, not violative of the Fourth Amendment. *Samuels*, 94 F.3d at 1168.

## IV. CONCLUSION

Because I have concluded that the hasps and locks placed on Hedrick's rental house on property which had been declared a nuisance by the City of Waverly did not violate Hedrick's right to procedural due process or Hedrick's Fourth Amendment rights, I shall grant summary judgment in favor of Defendants on the merits.

Further, because the evidence fails to create a genuine issue as to whether the defendants in fact violated clearly established law, the individual defendants are also entitled to qualified immunity. As discussed above, the law with regard to procedural due process and the Fourth Amendment as applicable to abatement-of-nuisance cases was clearly established when the defendants locked Hedrick's rental house. In light of this clearly established law and the information known at the time (i.e., the hazardous condition of Hedrick's property; Hedrick had been given notice and an opportunity to respond to the city's classification of his property as a nuisance; the house on Hedrick's property was a rental house; and nuisance-abatement procedures of significant magnitude were to be taking place during October 1996), a reasonable city official could have believed it was lawful to lock the rental house on Hedrick's property—with access available to Hedrick upon his request—while the nuisance was being abated by Hedrick during October 1996.

Accordingly,

IT IS ORDERED:

1. Defendants' motion to dismiss (filing 10), which has been converted into a motion for summary judgment pursuant to Fed. R.Civ.P. 12(b) (filings 12, 14), is granted;

2. Plaintiff's "motion for cross claim of summary judgment" (filing 18) is denied;

3. Plaintiff's "motion for oral testimony of summary judgment" (filing 19) is denied; and

4. Judgment shall be entered by separate document.

---

2. Hedrick's affidavit appears to challenge the city's power to apply its ordinances to Hedrick's property because it is a "farm" within the meaning of Neb.Rev.Stat. § 17-1001 (Michie 1995) (cities of second class may not apply ordinances when such application would "prohibit, prevent, or interfere with the conduct of existing farming ... operations"). There is absolutely no evidence that Hedrick's property is a farm within the meaning of this statute. Indeed, the videotape shown at the October 7, 1996, Waverly City Council meeting belies such a conclusion. (Filing 27, Ex. 12.)